State, New Jersey R. R. and Trans. Co., pros., v. Hancock, Collector, &c.

THE STATE, THE NEW JERSEY RAILROAD AND TRANS-
PORTATION COMPANY, PROSECUTORS, PLAINTIFFS IN
ERROR, v. HANCOCK, COLLECTOR, &c., DEFENDANT IN
ERROR.

1. A charter of a railroad company provided that the company should
be subject to a certain specified tax, and that no other tax should be
imposed; *held*—that such exemption extended to a tract of gravel
land purchased to provide materials for the repair of their road, and
also to a branch road connecting said gravel pits with their tramway.
2. Such an exempting clause will protect all property held by the com-
pany necessary to accomplish the end for which they were incorpo-
rated.
3. The word "necessary," in this connection, does not mean "indispen-
sable;" it embraces all things suitable and proper for carrying into
execution the powers granted.
4. The word "necessary" is not to be contra-distinguished from the word
"convenient," as was done in the case of *The State* v. *The Commis-
sioners of Mansfield*, 3 *Zab.* 510.

Error to the Supreme Court.

The prosecutors, in the year 1859, bought a farm of about
one hundred and ten acres, and built to it a branch from
their main line, about one and three-quarters of a mile long.
The farm was bought for the gravel which was on it, and
which was required for the ballasting of their road, and for
the maintaining and keeping it in repair. The branch was
built to transport the gravel more cheaply to the main line,
and had been and was still used for that purpose. This farm
and branch are in the township of Woodbridge, in the county
of Middlesex; and in the year 1867 the township authorities
assessed this farm and branch with a tax. A *certiorari* was
brought to set aside this tax. After argument, the assessment
was affirmed by the Supreme Court. See 4 *Vroom* 315. This
judgment was then removed into this court, and errors
assigned.

*J. C. Elmendorf*, for the plaintiffs in error, presented the
following points and authorities:

State, New Jersey R. R. and Trans. Co., pros., v. Hancock, Collector, &c.

I. The plaintiffs in error, the New Jersey Railroad and Transportation Company, claim that the branch railroad set forth in the return is exempt from taxation under the following clause in their charter :

"And that no other or further tax or imposition shall be levied or imposed upon said company." *Appendix to Laws of* 1849, *p.* 60, § 18 *of Charter.*

The tax or imposition imposed by the charter is heavy.    It is a tax of one-half of one per cent. to the state, on capital, a transit duty of twelve cents per ton on merchandise, and eight cents on every dollar received from passengers transported over the road, and who went beyond New Brunswick. The whole of the eighteenth section of the charter reads thus :

"SEC. 18. *And be it enacted,* That from and after the completion of the said railroad, and after the expiration of five years, the said corporation shall pay into the treasury of this state yearly, and every year, a tax of one quarter of one per cent. upon their capital stock paid in ; and after the expiration of ten years, a tax of one-half of one per cent. upon the true amount of the capital stock of said company *; and that no other or further tax or imposition shall be levied or imposed upon the said company ; provided, nevertheless,* that, in addition to the above, if at any time hereafter any railroad shall intersect or be attached to the railroad hereby established, so as to make a continued line of railroads, carrying passengers across the State of New Jersey, between the States of New York and Pennsylvania, respectively, then it shall be the duty of the treasurer of this company hereby chartered, under oath or affirmation, to make quarterly returns of the number of passengers, and the number of tons of goods, wares, and merchandise transported over the whole line of the road hereby chartered, to the treasurer of this state for the time being, and thereupon to pay the said treasurer of this state at the rate of eight cents for each and every passenger, and the sum of twelve cents for each and every ton of goods, wares, and merchandise so transported thereon in manner aforesaid."

The transit duty of eight cents on passengers was changed

to eight cents on a dollar received from passengers, by the supplement to the charter of April 18th, 1846, section two. *Appendix to Laws of* 1849, *p.* 66.

The seventh section of the charter of the prosecutors also provides, "That the said corporation may build bridges, fix scales, and weights, raise embankments, or make any other works necessary for the construction, use, or enjoyment of the said railroad," &c. *Appendix to Laws of* 1849, *p.* 55.

II. The branch railroad of the New Jersey Railroad and Transportation Company to the gravel pit, is a property reasonably incident to the enjoyment of the franchises of the said company, and was not liable to taxation. *The State* v. *Berry,* 2 *Harr.* 80 ; *Camden and Amboy Railroad Company* v. *Hillegas,* 3 *Harr.* 11 ; *Camden and Amboy Railroad Company* v. *Commissioners of Appeal,* 3 *Harr.* 76 ; *Gardner* v. *The State,* 1 *Zab.* 557 ; *The State* v. *Mansfield,* 3 *Zab.* 513.

This last case does not maintain the position of the Supreme Court, as the tax was imposed on houses built by the Camden and Amboy Railroad Company, and rented to workmen. *The State* v. *Minton,* 3 *Zab.* 529 ; *The State* v. *Flavell & Fredericks,* 4 *Zab.* 342 ; *The State* v. *Blundell,* 4 *Zab.* 405 ; *The State* v. *Ross,* 4 *Zab.* 503.

III. The State of New Jersey does not exempt this corporation from taxation, but prescribes as a rule that the taxes should be paid to the state, and that the property of the company should be free from assessment for taxation by the local assessors.

For this reason the decisions on the subject of the taxation of the property of railroad corporations in other states are not applicable to the plaintiffs in error.

The cases where the *exemption* from taxation was confined to the property the company could condemn, would not apply here, because there is no exemption from taxation. For cases of such exemption, see 2 *Redfield on Railways* 388, § 10.

A class of decisions applicable to corporations in other

states, where the property of such corporations has been made exempt from taxation, has been introduced in our state, and made applicable to corporations subject to taxation, without good reason therefor.

The system of taxation adopted by the state, with reference to this corporation, should have a liberal construction by the courts in favor of the company, inasmuch as it is not an exemption from taxation.

The property of the company, both real and personal, is taxed by the tax on capital, and the business energies of the company are taxed by the transit duties.

As the capital of the company is from time to time enlarged, it embraces bridges, rails, rolling stock, depot buildings, and property worn out and lost to use—the tax continuing on the former capital, and also the capital which goes into construction for the renewal of property, real and personal, that has been worn out and lost to use.

In addition to the taxes thus paid, a large amount of property owned by the company, and not in use for railroad purposes, is subject to annual assessment, for local as well as state taxes, which taxes are paid by the company.

These taxes, in the year 1867, amounted to $7,225.38.

The case of *The Inhabitants of Westchester* v. *The Western Railroad Company*, 4 *Metc.* 364, upon which Judge Vredenburgh puts his decision, cannot control this case.    In that case the railroad property of the corporation was, by the general rules of law of the State of Massachusetts, *entirely* exempt from taxation.

Chief Justice Shaw (4 *Metc.* 566) uses this language:

" Treating the railroad, then, as a public easement, the works erected by the corporation as public works, intended for public use, we consider it well established that, to some extent at least, the works necessarily incident to such public easement, are public works, and, as such, exempted from taxation."

The case of the New Jersey Railroad and Transportation Company differs essentially in this, that the state has made

a contract with the last named company, that they shall be taxed on their capital and on their business, and that such tax shall be paid directly to the treasurer of the state, and such tax shall be in lieu of any other tax upon the property of the company.

Until the case of *The State* v. *Mansfield* was decided, reported in 3 *Zab.* 510, the decisions in a similar clause in the Camden and Amboy Railroad charter had been uniform in the State of New Jersey, that all the property of the company was exempt.

This exemption was narrowed down in the case of *The State* v. *Mansfield*, on the grounds taken by the Supreme Court of Massachusetts ; in the case of *Worcester* v. *The Western Railroad Company*, and also on similar grounds taken in the Supreme Court of Pennsylvania. The Supreme Court of New Jersey seemed to have overlooked the very important facts that, in the States of Massachusetts and Pennsylvania, railroads were exempt from taxation on such part of the property as was used for the public easement.

A different principle, however, was announced in the case of *The New York and Erie Railroad Company* v. *Sabin*, 26 *Penn. St. R.* 243, (2 *Casey.*) In this last case there was a contract between the state and the company, and the court, Woodward, J., on page 246, uses this language :

" When, however, instead of surrendering the power, the legislature have exercised it by taxing all the property of a particular company in a specified manner, and have intimated no design to subject it to any further taxation, we hold the powers to be satisfied, and do not add, by judicial implication, burdens which the legislature have not thought fit to impose."

Until this case, now under consideration, arose, it never was considered the law of the State of New Jersey, that railroad property which was exempt from local taxation was such part of the lands of the company only as they had a right to acquire by condemnation, and which was included within the filed route. Such a rule was not maintained in the case of *The State* v. *Mansfield ;* in that case the court decided,

State, New Jersey R. R. and Trans. Co., pros., v. Hancock, Collector, &c.

" Depots, car-houses, water-tanks, shops for repairing engines, houses for smiths and bridge-tenders, coal and wood yards for fuel, for the use of locomotives, &c.    And these are within the fair consideration of the exempting clause, because they are necessary and indispensable for the operations of the company, and the accomplishment of the objects of their charter."

Such was not held to be the rule in the recent case of *The State, The Morris and Essex Railroad Company, pros.,* v. *Haight, Collector of Jersey City,* in which the opinion was delivered by Justice Depue.

The tax clause in the charter of prosecutors differs materially from those in the charters of all the companies in this particular.    There is a tax upon capital, and also on business, by way of transit duty.

It differs from most of the other charters in this, that the tax is on capital, and not on the cost.    The capital is always greater than the cost, inasmuch as it covers all the rolling stock, all personal and real property, and includes property worn out and property replaced.

The tax being on the business, such property as is reasonably fit to facilitate the business should be exempt.

IV.  The decisions heretofore made on the subject of taxing railroad corporations in New Jersey are not applicable to this case, for these reasons :

This branch road was not outside property awaiting for future use, at such times as the business of the company should be increased, and the works of the company should be enlarged.

It is property constantly in use for railroad purposes, as it is essential constantly to renew the ballasting of a road.

It is not property from which the company, either directly or indirectly, derived rent, like the houses of workmen.

It is not like property held and used for manufacturing locomotive engines or railroad cars.

It is a railroad used to supply the gravel for the annual

*repair* of the main line, which repair was not made out of things manufactured, but from soil near at hand.

The means by which the road-bed should be kept in repair, should not be the subject of taxation.

A side track, or railroad leading from a main line to a repair shop, should not, and would not, be subject to taxation, and yet it would be outside of the sixty-six feet of the main line authorized to be condemned.

It is a railroad, and used for the repair of a railroad.

A side track or railroad to a house for storing locomotives, should not and would not be taxed.

*Garret Berry*, for the defendant, presented the following points:

1st. That the tract of land and branch railroad so as aforesaid assessed by the collector of the township of Woodbridge, are, and were, entirely without the limits of the location of the road established by the prosecutors' charter.

2d. That the said branch road is not authorized by the seventh section of the charter of said New Jersey Railroad, it being, together with such branch road, a mere convenience to the said New Jersey Railroad.

3d. That the said farm and branch railroad, so as aforesaid assessed, being a mere convenience to said main railroad, are, by the principles of taxation laid down in the case of *The State* v. *Mansfield*, taxable, and were rightly assessed by the collector of the said township of Woodbridge.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. By the sixth section of their charter, (*Pamphlet Laws*, 1832,) the New Jersey Railroad and Transportation Company are invested " with all the rights and powers necessary to the survey, laying out, and construction and repair of a railroad not exceeding sixty-six feet in width," &c. ; and by the seventh section it is provided " that the said corporation may build bridges, fix scales and weights, raise embankments, or make any other works neces-

sary for the construction, use, or enjoyment of the said railroad, and may also enter upon said road and take possession of and use any materials necessary therefor, and if the said corporation and the owner or owners of such materials do not agree as to the price, the same shall be determined and settled in the manner heretofore provided for in the case of real estate or land." The same act provides that the corporation shall pay into the treasury a tax of one-half of one per cent. upon its capital stock, and that no other tax shall be imposed on said company. It is under this last clause that the plaintiffs in error claim that so much of the farm above mentioned as is useful on account of its gravel in the maintenance of their road, and the branch connecting this farm with their main track, are exempt from taxation.

Provisions in the charters of incorporated companies, similar to the one thus presented for construction, have, on several occasions, received consideration from the courts of this state, and, in some of their aspects, must now be understood as having a settled meaning. Thus, in an early case, it was decided that the exemption from taxation, according to the true import of the clause, extended not only to the privileges or franchises of the company, but had the effect to exonerate the company and its property generally from all taxes, whether for state, county, or township purposes. *State* v. *Berry,* 2 *Harr.* 80; *The Camden and Amboy R. R. Co.* v. *Hillegas,* 3 *Harr.* 11; *Camden and Amboy R. R. Co.* v. *Commissioners of Appeal,* 3 *Harr.* 71.

These cases conclusively settled the general rule, that the property of the corporation was to be free from taxation; and it would seem, that upon principle, this should have absolved from this kind of burden everything which the corporate body had the legal right to acquire and hold. This, apparently, would have afforded the most definite and practical measure by which to ascertain the extent of the immunity of these companies. But a different rule was adopted, and is so completely established by a line of decisions as to forbid the least idea of a change. In the case of *The State* v. *The Com-*

*missioners of Mansfield,* 3 *Zab.* 510, the doctrine was introduced, that it was not all the property of these incorporated companies, whose charters contained the exempting clause, that was protected, but such of their property only as was necessary to their operations and the accomplishment of the purposes of their charters. This principle has, over and over again, been the basis of judicial opinion, and has, at least twice, received the sanction of this court. *Gardner* v. *State,* 1 *Zab.* 557; *The State* v. *Flavell,* 4 *Zab.* 370; *The State* v. *Ross, Ib.* 497; *The State* v. *Blurdell, Ib.* 403; *The State* v. *Collector, &c.,* 2 *Dutcher,* 519; *The* v. *Collector,* 5 *Dutcher* 541; *Cook* v. *State,* 4 *Vroom* 475.

It is obvious from this array of authority, that the rule, at present pertinent, is not, in the least degree, in doubt—the only question is as to its application. As has been already remarked, not all the property which an incorporated company may actually hold, is protected by the exemption, but such part only as is necessary to carry into effect the powers granted. The decisions cited, as well as the circumstances of the present case, show that the application of this rule has not been devoid of difficulty, and it seems plain that the embarrassment has arisen from the uncertain meaning in this connection, of the word *necessary.* What property is *necessary* to a railroad company for the accomplishment of the objects of their incorporation? In the case of *The State* v. *The Commissioners of Mansfield,* already mentioned, this term, " necessary," is put in sharp contrast to the word "convenient." But this, I think, is clearly a mistake; and it is a mistake which has introduced confusion. The word necessary, in this use, is so far from being contra-distinguished from the word convenient, that the former term comprehends much that, in strictness, is embraced in the latter term. Power necessary to a corporation does not mean simply power which is indispensable. Such phraseology has never been interpreted in so narrow a sense. There are few powers which are, in the strict sense, absolutely necessary to those artificial persons, and to concede to them powers only of such

a character, while it might not entirely paralyze, would very greatly embarrass their operations. Such, in similar cases, has never been the legal acceptation of this term. A power which is obviously appropriate and convenient to carry into effect the franchise granted, has always been deemed a necessary one. For example, in the case of *The State* v. *The Commissioners of Mansfield*, it is said : " Power to construct a railroad, and establish transportation lines upon it, necessarily includes the essential appendages required to complete and maintain such a work, and carry on such a business, as the power to erect and maintain suitable depots, car-houses, water-tanks, shops for repairing engines, &c., coal or wood yards for fuel for the use of their locomotives," &c. Now it will be observed that these appendages thus enumerated, are nothing more than conveniences, which, in the rigorous meaning of terms, are not necessary ; yet no one will doubt that they plainly fall within the legal signification of that term. And it is to be further observed, that is the only force which in law is usually given to this word. Such was the limited meaning ascribed to it in the great case of *McCulloch* v. *State of Maryland*, 4 *Wheat.* 414. The constitution of the United States empowers congress to pass such laws as are " necessary and proper " for carrying into execution the powers granted, and it was insisted that, by this authority, such laws only could be passed as were indispensable. Referring to the term " necessary," Chief Justice Marshall says : " Does it always import an absolute physical necessity so strong, that one thing, to which another may be termed necessary, cannot exist without that other? We think it does not. If reference be had to its use, in the common affairs of the world, or in approved authors, we find that it frequently imports no more than that one thing is convenient, or useful, or essential to another. To employ the means necessary to an end, is generally understood as employing any means calculated to produce the end, and not as being confined to those single means, without which the end would be entirely unattainable." It is in this sense, I think, that the word is always

used in clauses which confer upon incorporated companies the general authority which is to enable them to perform the function for which they are enacted. In short, the term comprises a grant of the right to use all the means suitable and proper to accomplish the end which the legislature had in view, at the time of the enactment of the charter. What are means thus suitable and proper, cannot be reduced, it is probable, within the compass of any specific definition. But whatever doubts may occasionally arise with respect to this question, it does not seem to me that the circumstances of the present case should occasion any difficulty in the application of the rule of law which has been above considered. The plaintiffs in error have all the powers necessary for the construction and repair of their railroad, and they can take, by a compulsory proceeding, all materials necessary for this purpose. What they can take they can as clearly purchase, and in acquiring this land, with a view to the use of the gravel pits upon it for maintaining their road-bed, it would seem that they did that only which they had a plain right to do. Indeed, such an acquisition of property appears to approximate to an act of almost pure necessity. Nor does the branch connecting this property with the main road appear to me to be susceptible to the application of a different rule. This branch is the necessary instrument by which the materials purchased are conveyed to the point where they are wanted for use. I suppose it will not be denied, that the company can effect such conveyance in some form—why not, then, effect it by this branch, which is the most economical form ? A concession of the right to transport the materials seems to involve, as a necessary consequence, the right to the use of the most convenient and least expensive method. The purchase of so much of this farm as consists of beds of gravel, and the erection of this branch road for the uses in question, in my judgment, were acts which, in a legal sense, were necessary to effect the objects for which the plaintiffs in error were incorporated. The result, therefore, is that the branch road, and that portion of the farm which is or will be useful

to the company, on account of its gravel, should be exempted from the tax which has been imposed upon them.

The test applied in the court below, to ascertain the immunity of a corporation from taxation by force of exempting clauses similar to the one under consideration, appear to me entirely inadmissible. It was supposed that such exemption never obtained, except with respect to property which the company could take by condemnation. This would subject to taxation almost all the appendages of these companies, such as depots, car-houses, wood-yards, &c., for it will be found that in most charters, a mere privilege to purchase property for such purposes is conferred, and that it cannot be taken *in invitum.* That property obtained for such objects cannot be taxed, has long been the admitted rule—a rule which has received the express sanction of this court in the case of *Gardner* v. *The State,* 1 *Zab.* 557. The subject of taxation in that case was land which the company had acquired, but had not the right to take by condemnation; and such taxation was pronounced illegal.

The judgment should be reversed.

*For reversal*—The CHANCELLOR, CHIEF JUSTICE, Justices BEDLE, DALRIMPLE, DEPUE, Judges CLEMENT, KENNEDY, OGDEN, OLDEN, WALES—10.

*For affirmance*—None.

CITED *in State, C. & A. R. R. Co., pros.,* v. *Woodruff,* 7 *Vr.* 95 ; *State, Gregory, pros.,* v. *Jersey City,* 7 *Vr.* 168 ; *State, D., L. & W. R. R. Co., pros.,* v. *Fuller,* 11 *Vr.* 330; *Inhabitants of Greenwich* v. *E. & A. R. R. Co.,* 9 *C. E. Gr.* 223.