# CASES AT LAW

DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

MARCH TERM, 1890.

THE STATE, THE SISTERS OF CHARITY OF SAINT ELIZA-
BETH, PROSECUTOR, PLAINTIFFS IN ERROR, v. THE COL-
LECTOR OF THE TOWNSHIP OF CHATHAM, DEFENDANT
IN ERROR.

A corporation owning real estate the products of which are exclusively
expended in the training and furnishing of persons for charitable pur-
poses, such as the visitation of the sick, the care of hospitals, of
orphanages and poor schools, is exempted from taxation by force of
the eleventh section of the supplement of April 11th, 1866, of the "Act
concerning taxes." *Rev., p.* 1151.

On error to the Supreme Court.  For opinion of Supreme
Court, see 22 *Vroom* 89.

For the plaintiff in error, *Theodore Runyon.*

For the defendant in error, *Jas. C. Youngblood.*

373

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.  The single question considered and decided in the Supreme Court was, whether the property of the plaintiff in error was entitled to exemption from taxation by force of the special act to that purpose, as it was claimed, approved March 16th, 1869.  The judgment that resulted was adverse to the claim of such immunity, the ground of decision being, that even if the act referred to was applicable to the property of the plaintiff, such act must be held to have been annulled by the intrinsic force of the amendatory provision of the constitution, requiring property to "be assessed for taxes under general laws, and by uniform rules, according to its true value."  The general rule that was deemed apposite was thus expressed in the opinion that was read in the case, in these words, viz.: "That under our present constitution there can be no exemption of property from taxation by force of special or local statutes, except, of course, in case of some contract which the amendment of the organic law could not reach."

The general proposition thus applied and announced is, in the opinion of this court, wholly indisputable; it is but the expression of the force of a train of decisions in the Supreme Court and in this court.

In this respect in the views expressed in the court below, this court concurs.

But notwithstanding this concurrence, we have concluded that the property of the plaintiff in error should not be subjected to this tax.  This view is the result of our conviction that there is a clause in section 5 of the supplement of April 11th, 1866, to the General Tax act that is applicable in this instance, and which exempts the lands in question from taxation.  *Rev., p.* 1151, § 64.  This section, after enumerating certain classes of property that are not to be taxed, such as colleges, academies, public libraries, buildings used for religious worship, provides, in these words, "that all buildings used exclusively for charitable purposes, with the land whereon the

same are erected, and which may be necessary for the fair enjoyment thereof," shall be similarly exempted.

No reason is perceived why this statutory immunity should not appertain to the lands comprehended in this controversy. They and the buildings upon them are devoted solely to charitable uses. By the express terms of its charter the corporation cannot exist except for such beneficent purposes, for, by the second section of that act, it is declared "that the essential object of the said corporation shall be the instruction and education of youth, the erection and maintenance of a hospital for the sick and destitute, and affording and rendering assistance to the poor and destitute." And as the evidence shows, this corporate body has literally and exclusively carried into effect the purposes for which it was thus created. It is the owner of about three hundred acres of land, only two-thirds of which are productive; upon this tract is a building in which the corporators, being the Sisters of Charity mentioned in the charter, live; part of such building is devoted to the uses of a school. The sources of their maintenance and their work is thus described by the intelligent witness who testified on the subject: "They train, discipline and furnish sisters for charitable purposes, which include the visitation of the sick, the care of hospitals, of orphanages, of poor schools." "For the purpose of ministering to the sick they train nurses; they train them for taking charge of orphans; for teachers, also. After they are so trained they send them out to pursue the various duties of their vocations in hospitals, poor schools, and they are sisters in general in orphanages." "All that the farm produces is applied to the support of the institution. None of the products of the farm are ever sold. * * * If anything remains after the necessities of the sisters are supplied, it must be applied, according to their rules, either to extend their establishments for the public good or appropriated to the relief of the poor." With respect to the school, some of the scholars are educated gratuitously, and the money derived from the tuition of the others "is appropriated, as the rules require, to the support of the sisters who

minister to the sick in hospitals, take care of orphanages, and otherwise to the relief of the poor and for the extension of their charitable institutions."

In the clear light of this description it does not seem possible to mistake the character of this institution; its entire aim and end is to instruct the poor, to nurse the sick and to support the orphan. It seems plain, that if under any conditions buildings and lands can fulfill the statutory requirement of being "used exclusively for charitable purposes," the property now in question must be able to do so. To tax this establishment is in fact to tax the sick and destitute. In our opinion, the statute is a preventative of a course of action so impolitic and deplorable.

. It is not necessary, but it is not out of place, to remark, that this section of the statute relating to taxation should be construed, not narrowly by its letter, but liberally and in view of its object and spirit. This was the method applied in the case of *State* v. *Ross, Collector of Princeton,* 4 *Zab.* 497, in which it was decided, that under the exemption of "all colleges, academies, or seminaries of learning," were embraced, by implication, the dormitories for the students and the houses for the professors, erected on the academic grounds. In that instance it is obvious that the court did not merely interpret the words of the statute, but construed the clause so as to give effect to the plain legislative scheme. This was putting the subject on the proper plane.

With regard to the question suggested by a passing remark in one of the briefs of counsel, touching the power of the legislature to create these exemptions enumerated and provided for in section 5 of the Tax act, no difficulty is perceived. That clause constitutes not a particular, or special, regulation, but a general one, for it completely classifies subjects that are respectively possessed of characteristics naturally justifying their immunity from taxation, and which severally demark them from all other things of a taxable nature. This characteristic is, that the subjects embraced in each of these classifications are plainly of such public concern that a resort to

taxation, for their support or promotion, would be legitimate. There appears to be no reason to believe that classes of subjects that are so nearly allied to the common welfare that they may, by legislative action, be made a charge upon the public, may not, by the same authority, be liberated from all contribution to the public rates. The incongruity of the opposite of this rule is at once apparent by an example; take, for instance, the public schools: they are maintained by means of taxation; does the law compel the taxation of their property? Obviously, to answer this question in the affirmative is to say, in effect, that what the public gives to these institutions with the one hand it is bound to take away in part by the other, which, of course, is a manifest absurdity. It is deemed that these provisions of the Tax act are legitimate.

It will be observed, therefore, that, although these exemptions were created before the amendment to the constitution that requires property to be assessed for taxation under general laws, the introduction of such amendment could not in any wise affect them; they are not inconsistent with it, and the amendatory clause repeals, *ipso facto*, nothing that is not out of harmony with the new scheme which it introduces.

Let the judgment be reversed, and a judgment entered in favor of the plaintiff in error.

MAGIE, J. (dissenting).    The only special reason assigned by prosecutor for vacating the tax brought up to the Supreme Court by this *certiorari* was, that by an act of the legislature, passed March 16th, 1869, their property was exempted from taxation.

The Supreme Court, it is conceded, correctly held, that the act so relied on has been repealed by the amended constitution.

In my judgment, this court ought not to consider or adjudicate on the exemption of prosecutor's property under the provisions of the General Tax law of 1866. The public authorities, interested in maintaining this tax, have had no notice of any claim to exemption under that act. They were not called on to show what exemption was made thereunder.

Incidentally the evidence does show exemptions under that act, and, in the absence of proof to the contrary, it should be presumed that all was exempted that the act directed to be exempted.

The public·ought not to be concluded on a point not raised or put at issue, as to which they were not notified to produce evidence, and which, I may add, was not raised in the argument.

I vote to affirm the judgment below.

*For affirmance*—MAGIE. 1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, GARRISON, SCUDDER, BROWN, CLEMENT, COLE, SMITH, WHITAKER. 10.