TOWNSHIP OF TEANECK, PETITIONER-RESPONDENT, v.
LUTHERAN BIBLE INSTITUTE, DEFENDANT-APPEL-
LANT.

Argued November 14, 1955—Decided December 5, 1955.

*Mr. James A. Major* argued the cause for the defendant-appellant.

*Mr. John J. Deeney* argued the cause for the petitioner-respondent.

The opinion of the court was delivered by

BURLING, J.   The Bergen County Board of Taxation and the Division of Tax Appeals of the Department of the Treasury concluded that three buildings owned by the Lutheran Bible Institute (hereinafter referred to as the Institute) were exempt from the property tax, *R. S.* 54:4–1 *et seq.*, imposed by the Township of Teaneck.   Teaneck appealed the administrative determination and the Superior Court, Appellate Division reversed, *Teaneck Township v. Lutheran Bible Institute*, 34 *N. J. Super.* 418 (*App. Div.* 1955).   We granted certification upon the Institute's petition, 19 *N. J.* 326 (1955).

The facts are not in dispute.   The parties have presented the factual resume from Judge Clapp's opinion below, 34 *N. J. Super.*, at *pages* 419–420, for our consideration:

"The Institute, a religious corporation organized under Title 16 of the Revised Statutes, *N. J. S. A.*, owns and operates in Teaneck a school of Christian education, teaching the Bible and other subjects for the benefit of laity of the

Lutheran denomination. Students attend free of charge. Four ordained ministers furnish classroom instruction and conduct regular chapel services for the benefit of the students.

"The three buildings in question, owned by the Institute, are not in the same tax block as the school and * * * are two miles away from it. Each is occupied * * * rent-free, by one of the ministers (one of the three being the Dean of the school) and his family as a dwelling. Here he has his office or study, and though no classes or meetings are held there regularly, students do seek him out at his home for additional guidance and instruction."

The narrow question is this: Are the three faculty residences entitled to the exemption under *R. S.* 54:4–3.6 because they are "buildings actually and exclusively used in the work of associations and corporations organized exclusively * * * for religious * * * purposes * * *?"

The Appellate Division held that a building used primarily as a residence for one engaged in the work of a religious corporation may not partake of the exemption because it is not "actually and exclusively used in the work" of the corporation.

The Institute argues that "the buildings which house our faculty are as much a part of the Institute as the classrooms themselves" and relies upon such adjudications as *State v. Ross*, 24 *N. J. L.* 497 (*Sup. Ct.* 1854) (the residences of the president and faculty members owned by Princeton University were held to be exempt) and *Borough of Chatham v. Sisters of Charity*, 92 *N. J. L.* 409 (*E. & A.* 1918) (residence of parochial school teachers used in part for religious worship held exempt). These exemption cases were decided on clauses relating to "colleges" or "schools," a statutory basis which the Institute has not chosen to invoke. But assuming *arguendo* the liberality of the "school" decisions, *Piscataway Township v. State Bd. of Tax Appeals*, 129 *N. J. L.* 261 (*Sup. Ct.* 1942), affirmed 131 *N. J. L.* 158 (*E. & A.* 1944), cf. *Trustees of Rutgers University v. Piscataway Township*, 134 *N. J. L.* 85 (*Sup. Ct.* 1946), they furnish no decisive rationale for the "religious purposes"

clause we are now dealing with. *Cf. The Kimberley School v. Town of Montclair*, 2 *N. J.* 28 (1949).

The only decision which would appear to support the Institute's position is *Congregation of Mission of St. Vincent De Paul v. Brakeley*, 67 *N. J. L.* 176 (*Sup. Ct.* 1901). There an exemption was sought and allowed for property owned by the plaintiff which included a residence used by ecclesiastical students when not engaged in their studies during the summer months. The court felt bound by the earlier case of *Litz v. Johnston*, 65 *N. J. L.* 169 (*Sup. Ct.* 1900), which apparently involved the same property, and accordingly sustained the exemption. In the light of this prior litigation the decision in *Brakeley* was based upon the charitable character of the plaintiff owner rather than the specific use of the property. In *Sisters of Peace v. Westervelt*, 64 *N. J. L.* 510 (*Sup. Ct.* 1900), however, the former Supreme Court denied an exemption under the same statutory clause on property owned by a charitable corporation and used as a "summer boarding house," the proceeds whereof were devoted exclusively to charitable purposes. The emphasis in *Westervelt* was clearly upon the nature of the property use rather than the charitable mission of the owner. See also *Sisters of Order of Saint Dominic of Isle City v. City of Sea Isle City*, 2 *N. J. Misc.* 384 (*Sup. Ct.* 1924). *Cf. Trustees, etc., Prosecutor, v. State Board of Tax Appeals*, 119 *N. J. L.* 504 (*Sup. Ct.* 1938), affirmed 121 *N. J. L.* 65 (*E. & A.* 1938). So, in *State, Church of the Redeemer v. Axtell*, 41 *N. J. L.* 117 (*Sup. Ct.* 1879), a parsonage was held not to be within the exemption granted to "buildings erected and used for religious purposes," for its "primary and chief purpose * * * was a dwelling for the pastor." *Cf. State, First Reformed Dutch Church v. Lyon*, 32 *N. J. L.* 360 (*Sup. Ct.* 1867). (The Institute does not claim exemption under the present parsonage provision of *R. S.* 54:4–3.6. See *St. Matthew's Lutheran Church for the Deaf v. Division of Tax Appeals*, 18 *N. J. Super.* 552 (*App. Div.* 1952)).

This court has recognized that in matters of tax exemption the use to which the property is devoted is the essential

consideration and not the character or status of the owner. In *N. J. Turnpike Authority v. Washington Township,* 16 *N. J.* 38, 44–45 (1954), Mr. Chief Justice Vanderbilt stated:

"Moreover, tax exemption statutes, if based on the personal status of the owner rather than on the use to which the property is put, run afoul of the tax article of the Constitution of 1947 which provides in part: 'Property shall be assessed for taxation under general laws and by uniform rules.' *Const Art.* VIII, *Sec.* I, *par.* 1. The similar provision of the *Constitution of 1844, Art.* IV, *Sec.* VII, *par.* 12, that 'Property shall be assessed for taxes under general laws, and by uniform rules, according to its true value,' has been soundly construed to prohibit such exemptions:

'The decisions construing this constitutional provision, in so far as they have sanctioned classifications as the basis of legislation, either for taxation or for exemption, have done so upon the express ground that such classifications were based upon features that inhered in the property itself, or in the purposes to which it or its usufruct was devoted. To substitute for property in such classifications the persons who own property, and then to base the proposed exemption upon the *status* or vocation or avocation of such persons, is without any constitutional warrant. Exemptions from taxation, therefore, of property, real or personal, that are based not upon any characteristic possessed by such property, or upon the uses to which it is put, but upon the personal *status* of the owners of such property, are void.' *Tippett v. McGrath,* 70 *N. J. L.* 110, 113 (*Sup. Ct.* 1903), affirmed 71 *N. J. L.* 338 (*E. & A.* 1904)."

■ This judicial attitude is but a facet of the rule of construction that all doubts are resolved against those seeking the benefit of a statutory exemption which in turn is based upon the fundamental principal of equality of the taxation burden. *Julius Roehrs Co. v. Division of Tax Appeals,* 16 *N. J.* 493, 497–498 (1954); *Board of National Missions v. Neeld,* 9 *N. J.* 349, 353 (1952); *Trenton v. State Board of Tax Appeals,* 127 *N. J. L.* 105, 106 (*Sup. Ct.* 1941), affirmed *Trenton v. Rider College,* 128 *N. J. L.* 320 (*E. & A.* 1942); *Sisters of Charity v. Cory,* 73 *N. J. L.* 699, 706 (*E. & A.* 1907). We approach the issue *sub judice* accordingly.

■■ The abbreviated record before us clearly requires an affirmance of the determination below. The buildings in question are not exclusively used in the religious educational

endeavor of the Institute. The predominant utility is a residential accommodation, a home provided for the several members of the faculty and their respective families where students are invited to call and discuss matters of mutual interest and concern if they so desire. The fact that the clergymen maintain a study in their home does not alter its essential characteristic nor is the geographical location of the residences from the Institute a decisive factor. The use to which the buildings are devoted is not within the statutory requirement. (See *St. John Evangelical Lutheran Congregation v. Board of Appeals,* 357 *Ill.* 69, 191 *N. E.* 282, 283 (*Sup. Ct.* 1934), where the plaintiff sought and was denied an exemption for a residence inhabited by a teacher of its parochial school because it was not property " 'used exclusively for religious purposes, or used exclusively for school and religious purposes  *  *  *.' " See also Annotations, 13 *A. L. R.* 1196, 168 *A. L. R.* 1222, 1247). To hold otherwise would do violence to the rule of construction concerning exemptions which we believe to be well-founded in principle. If the subjects of exemption are to be enlarged it is for the Legislature to bestow the privilege. See, *e. g., L.* 1955, *c.* 148, extending a partial immunity to the dwelling house "belonging to any religious association or corporation actually occupied as a residence by a clergyman  *  *  *  who is a district superintendent" of such organization.

Judgment affirmed.

*For affirmance*—Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—6.

*For reversal*—Chief Justice VANDERBILT—1.