41 N.J. Super. 504 (1956)
125 A.2d 411
CITY OF ASBURY PARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT,
v.
STATE OF NEW JERSEY, DIVISION OF TAX APPEALS, DEPARTMENT OF THE TREASURY, AND THE SALVATION ARMY, A CORPORATION OF THE STATE OF NEW JERSEY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 1956.
Decided September 26, 1956.
*505 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Sidney J. Meistrich argued the cause for appellant City of Asbury Park.
Mr. Henry H. Patterson argued the cause for respondent The Salvation Army (Messrs. Patterson & Cooper, attorneys).
*506 The opinion of the court was delivered by CLAPP, S.J.A.D.
The question brought up by this appeal is whether the Salvation Army Retired Officers' Home, Asbury Park, N.J., and the lots on which it is located, together with the personalty in it, all owned by The Salvation Army, a religious corporation of New Jersey, are entitled to an exemption under the property tax law. The City of Asbury Park imposed a tax thereon for the year 1954. The county board vacated the assessment, and the State Division affirmed. For a decision of the Division involving a prior year and premises formerly occupied by the Home, see City of Asbury Park v. Salvation Army, 26 N.J. Misc. 170 (Tax App. 1948). The city now appeals to us.
The Home is used primarily for Salvation Army officers, pensioned and retired because of old age or infirmity, though it is available also for Salvation Army workers and employees under like conditions. Those admitted must each contribute to the Home 75% of his pension from the Salvation Army (pensions run from $40 to $75 a month for each individual); and the deficit, which amounted in the fiscal year 1954 to 60% of the Home's expenses, is made up by The Salvation Army, a New York corporation.
The Home cares for the neediest cases. At the time of the hearing in the Division, 38 retired officers and two employees resided in it. There are about 5,000 officers of the Salvation Army in the United States, all ordained ministers, who receive compensation which is, generally speaking, less than that paid the employees. The demands of their work are very heavy, taxing their strength, physically and spiritually  indeed so heavy as to have broken the health of the officers in a substantial number of cases and thus to have presented the organization with a serious problem. So the Home was conceived of as a means by which the Salvation Army could discharge in a measure its responsibilities to these persons as well as to those who arrive at old age in need after having given their lives in the service of its charitable endeavors.
*507 The city's first and principal point is that the Home was not "actually and exclusively used in the work of" the corporation. N.J.S.A. 54:4-3.6. Reliance is put chiefly upon Township of Teaneck v. Lutheran Bible Institute, 20 N.J. 86 (1955). There the Lutheran Bible Institute was denied an exemption with respect to three residences belonging to it, which were located some two miles from the Institute and which were each occupied by a minister and his family. Each residence was the center of the minister's family life; this was its "predominant utility," as the Supreme Court put it. Only in a minor way did it enter into the "work" of the Institute. So if a manufacturing company happened to own the houses where its officers and their families lived, one would hardly say that these houses were "actually and exclusively used in the work" of the company. On the other hand, the operation of the Home constitutes the work of the religious corporation under consideration, or rather an important part of its work; and the building and land of the Home are "actually and exclusively used" in that work. The Teaneck case is plainly distinguishable.
On the oral argument before us, the city seemed to concede the force of this reasoning and to have somewhat shifted its position, arguing that if the certificate of incorporation of the respondent corporation had authorized the operation of this Home, the property would be exempt. The city in making this point relies upon that portion of N.J.S.A. 54:4-3.6 which refuses exemptions with respect to property used in the work of an association organized for charitable purposes, unless the association is a New Jersey corporation
"authorized to carry out the purposes on account of which the exemption is claimed." (Italics added)
This calls for a construction of the certificate of incorporation of the respondent, Salvation Army, in particular of these parts of it:
*508 "FOURTH: That the objects for which said Corporation is formed, are as follows:
(a) For the worship of Almighty God and the preaching of the Gospel; to benefit the poor and needy by ministering to their needs and necessities; by assisting them to establish themselves in life by bringing their minds and hearts under the influence of education and of the Christian religion, by aiding the erring, the sick, the aged and homeless and by otherwise promoting their welfare according to the rules and regulations and doctrines and disciplines and usages of The Salvation Army and to carry on every kind of work necessary and incidental to the maintenance of such religious, educational, charitable and philanthropic work, but that all such work shall be conducted not for pecuniary profit.
(b) To take, to have and to hold and control all the temporalities and property, both real and personal, belonging to The Salvation Army in the State of New Jersey and upon the filing and recording of this Certificate to become the lawful Owner of any and all such property now held in the name of The Salvation Army, a Corporation under the Laws of the State of New York, and situate in the State of New Jersey, together with the revenues therefrom, and to see that the entire receipts, revenues and emoluments derived therefrom and from all the various branches of its work in the State of New Jersey are devoted exclusively to such religious, educational, charitable and philanthropic work, with the exception of a moderate and reasonable compensation to those conducting and having the management of its objects and purposes." (Italics added)
The city's argument is that under this certificate of incorporation the charitable corporation was not "authorized" to make the Home a part of its "work" (N.J.S.A. 54:4-3.6). The point is without merit.
It is established that the italicized words in the charter "necessary and incidental to the maintenance" of the charitable work have reference to all means "appropriate and convenient" or "suitable and proper" to the work. State, New Jersey R. and Transp. Co. v. Hancock, 35 N.J.L. 537, 546, 547 (E. & A. 1871). See further Leeds v. Harrison, 9 N.J. 202, 211, 212 (1952).
In 6 Fletcher Cyclopedia of Corporations 276 (1950 rev. vol.) it is stated that a corporation is generally held to have an implied power to perform acts
"in part or wholly to protect or aid employees. While there is some conflict in the decisions, the later and better considered decisions favor such acts as building homes, places of amusement, hospitals, etc., for employees as within the corporate powers."
*509 See People ex rel. Metropolitan L. Ins. Co. v. Hotchkiss, 136 App. Div. 150, 120 N.Y.S. 649 (App. Div. 1909), a well-considered case, where it was held that a life insurance corporation empowered to own realty requisite for the accommodation of its business, may erect a hospital for its consumptive employees; Steinway v. Steinway & Sons, 17 Misc. 43, 40 N.Y.S. 718 (Sup. Ct. 1896), another well-considered case, upholding, as intra vires, the purchase by a corporation, organized for manufacturing purposes, of a large tract of land and the erection thereon of employees' residences, and also upholding contributions made by the corporation toward the establishment in the locality of a church, a school, a free library and a free bath for its employees.
The Court of Errors and Appeals in Beck v. Pennsylvania R. Co., 63 N.J.L. 232, 239 (1899), speaking of a relief fund for sick and injured employees, which it was argued was not permitted by the corporate employer's charter, had this to say:
"On the part of the employer, such a scheme may be deemed likely to increase the efficiency of the force it employs; and, on the part of the employe, it may tend to relieve from anxiety as to support if injured by any of the many dangers to which he is daily and hourly exposed. As incidental to the contract of employment and compensation, therefore, it is not ultra vires."
Cf. New York Central R. Co. v. Division of Tax Appeals, 137 N.J.L. 472, 475 (Sup. Ct. 1948); A.P. Smith Mfg. Co. v. Barlow, 13 N.J. 145 (1953).
In our opinion the operation of the Home is authorized by the certificate of incorporation, even though the Home accommodates officers and employees of the Salvation Army in the United States, who are not attached to the New Jersey corporation. Subparagraph (a) of paragraph Fourth of the certificate does not limit the activity of the corporation to New Jersey; looked at, at least by itself, it is broad enough even to authorize the operation of the Salvation Army throughout the world. We think the establishment and operation of a Home to care for officers and employees *510 of the Salvation Army engaged in its work outside New Jersey, as well as those so engaged inside the State, are "necessary [that is, appropriate] and incidental to the maintenance of * * * charitable work" authorized by subparagraph (a). To employ the test stated in Steinway v. Steinway & Sons, supra, the operation of the Home is reasonably tributary to the promotion of the broad corporate purposes above stated, and in a substantial, not in a remote and fanciful, way.
The city's final point is that N.J.S.A. 54:4-3.6 requires the building to be "wholly controlled by the corporation." This purports to be a quotation from the statute cited, but the statute does not say this. It requires the building to be "wholly controlled by * * * charitable * * * purposes." The respondent before us is an active separate corporate entity, with its own Board of Directors and an active principal office in Newark. According to the testimony, it appears to carry on, free from supervision (except as to the Home), the religious and charitable purposes set forth in the certificate of incorporation; it takes in, spends and exclusively administers funds raised in New Jersey, paying the salaries of its officers and employees in this State, including employees of the Home, from bank accounts in this State. It operates the Home itself, subject however to the supervision of The Salvation Army, a New York corporation (which was referred to in the testimony below as the parent corporation), with contributions being supplied by the New York corporation to make up the Home's deficits.
The statute does not deny an exemption to a New Jersey religious corporation because its activities are subject to supervision by a corporation of another state or because the latter corporation contributes to it.
Affirmed.