RIMM, J.T.C.
Ventnor City claims that four residential properties owned by defendant are not entitled to exemption from local property taxation as adjudicated by the Atlantic County Board of Taxation.
For the tax year 1991, the subject properties, located in block 121 on the tax map of Ventnor City, were assessed as follows: lot 25.01, $182,400; lot 25.02, $145,400; lot 25.03, $169,300 and lot 25.04, $175,100. On appeal to the Atlantic County Board of *448 Taxation, judgments were entered granting each property exemption from local property taxation. The municipality, dissatisfied with the judgments, filed a complaint in the Tax Court seeking to have the properties declared taxable and to reinstate the original assessments. The matter is before the court on stipulated facts, the testimony of one witness and briefs submitted by the parties. The parties have agreed that the issue of exemption is bifurcated from the issue of the quantum of the assessments.
Defendant, Interdenominational Foreign Missionary Society, hereafter “IFMS,” is a nonprofit corporation of the State of New Jersey incorporated on May 15, 1922. It is the owner of the four properties which are also designated as 12 North Portland Avenue, 18 North Portland Avenue, 24 North Portland Avenue, and 26 North Portland Avenue.
The Pennsylvania Medical Missionary Society, hereafter the “Society,” is a nonprofit corporation of the Commonwealth of Pennsylvania and is tax exempt under the applicable Internal Revenue Code provisions. The Society transferred all four properties to IFMS for $1.
The properties are residential properties in the R-7 zone. This zone permits single-family and two-family dwellings. The interiors of the properties are not divided into separate living quarters, and they are maintained as single housekeeping units, with the occupants sharing household chores and eating together in a family structure.
In order to properly evaluate the property owner’s claim for exemption, it is necessary to explore the history of both IFMS and the Society. The International Medical Mission Society was organized in New York City in 1881 to provide financial aid to medical students preparing for missionary work in foreign lands. In 1890, a Merion Auxiliary of The International Medical Mission Society was formed in the Philadelphia area. In 1907, a medical missionary in Burma became ill and returned to the United States on furlough. He had no home in this country. Members of the Merion Auxiliary rented a cottage in Ventnor City for his use. The auxiliary later purchased the property, and it continued to be *449 used for missionary families returning on furlough. In 1909, the Merion Auxiliary was incorporated as the Pennsylvania Medical Missionary Society for the following purpose:
to give financial assistance to students of evangelical faith preparing for medical missionary work; to defuse (sic) intelligence and arouse interest in medical missions; to establish and maintain homes and residences for the use of missionaries or students preparing for missionary work; and obtain systematic contributions of money for the above object [sic].
The Society provides financial aid to foreign medical students and to medical students in the United States.
An increase in the need for furlough cottages developed. In addition, a need developed for places where missionaries, who rarely have a home of their own in this country, could stay when they returned from overseas before going on to another assignment or establishing themselves on retirement. As a result, additional cottages were gradually acquired. The cottages have been in constant use since 1931.
In 1922, the IFMS was organized as a separate corporation. Its certificate of incorporation reads in part as follows:
[t]he purpose for which this corporation is formed is to diffuse information concerning foreign missions, particularly medical missions, and to arouse interest therein; to aid students in obtaining proper education for missionary service; to establish and maintain homes or residence (sic) in the State of New Jersey and elsewhere for the free use of missionaries on temporary leave of absence form (sic) their work and for the free use of students preparing for such work; to engage in such other [b]enevolent and charitable activities as may be determined from time to time by the trustees with the approval of the member (sic) of the Corporation given in such manner as may be provided in the by-laws; to obtain, hold and disburse contributions of money, and to acquire, Hold and dispose of real and personal property in accomplishing any or all of the purpose (sic) for which the corporation is formed.
The certificate of incorporation also states:
[t]he business of the corporation is to be conducted in the City of Ventnor, in the State of New Jersey and elsewhere in said State, and also in other States of the United States.
According to a resumé of the activities of the IFMS, submitted as an exhibit to the stipulation of facts, “dozens of missionary families have used the Ventnor furlough cottages over the years.”
Also submitted with the stipulation of facts, and made a part of it, are the annual reports of IFMS for the period from May 1,1989 *450 to April 30, 1990 and for the period from May 1,1990 to April 30, 1991. The first report states that during the year, 36 families occupied the furlough cottages for various lengths of time. Eighteen families were from foreign countries, ten were serving in the United States and eight families were retired. All the cottages were occupied during the summer months and for most of the winter months. The report indicates that the occupants of the furlough cottages were associated with the following organizations: United Presbyterian Church; International Mission; Sudan Interior Mission; Bible Christian Union; OverSeas Missionary Fellowship; Global Mission Ministries; Arab World Ministry; United Methodist Church; Evangelical Alliance Mission; Home Missionary; Evangelical Baptist Fellowship of Churches; UFM International; Arctic Missions; BCM International; Christian Literature Crusade; Africa Inland Mission; Navigators of Canada; Evangelical Free Church; American Missions; Assemblies of God; UCBWM; United Church of Canada; Baptist Academy and Latin American Mission. A total of 67 people were listed under the various organizations. Of the 67 people listed, 13 were indicated as retired.
The annual report for the period of May 1, 1990 to April 30, 1991 states that during the year 44 families occupied the furlough cottages for various lengths of the time. Of this group, 15 families were doing mission work overseas, representing 12 different countries, 15 families were serving in mission positions in the United States and 14 families were retired missionaries. The report says that, although the cottages were occupied during the summer months, “unfortunately” the cottages were vacant for several months during the winter. This report indicates that occupants of the furlough cottages for the year were involved with the following organizations: United Presbyterian Church; Evangelical Alliance Missions; Sudan Interior Missions; International Mission; Latin American Mission; Christian and Missionary Alliance; United Methodist Church; Fellowship of Independent Missions; American Mission for Opening Churches; BCM International; CAM International; IFM International; World Witness Associate-Reform Presbyterian; Gospel Missionary Union; Africa Inland Mis *451 sion; Africa Evangelical Fellowship; World Out Reach Fellowship; Global Out Reach Mission; Atlantic City Rescue Mission; National Council of Churches; Baptist International Mission; Board of International Ministries-American Baptist; Baptist General Conference; Bible Christian Union; Assemblies of God; Disciples of Christ; Interact Ministries; Evangelical Free Church of America and Association Des Eglises Baptistes Du Canada. A total of 80 persons were listed under the various organizations. Of that number, 23 were retired. It should also be noted that 19 of the persons who resided in the properties in the 1989-1990 period also resided in the properties in the 1990-1991 period.
The witness who testified is the chairman of the admissions committee of IFMS. Her report for each period is included in the annual reports submitted with the stipulation of facts. Her testimony was that the four properties are used for vacation purposes, sabbatical leave for missionaries serving overseas, “R and R” for missionaries and residences of missionaries waiting reassignment from one overseas post to another overseas post who do not otherwise have places of residence in the United States. She said some of the occupants also engage in fundraising' activities for their respective organizations. By “R and R” she said she meant “rest and relaxation.” She also testified that there was more use of the properties in the summer months than in the winter months because of the shore weather. Her testimony also indicated that IFMS engaged in no charitable or religious activities but only owned the four subject properties which were used by other charitable and religious organizations. Finally, she testified that of the 19 persons who were residents in both years referred to in the reports, some were listed because they resided over the May 1, 1990 date. However, she also said that there were others who were there on vacation during both years in the summer months.
For the tax years 1922 to and including 1990, the four properties were exempt from local property taxation. In 1966, the city “attempted to place these four properties on the tax rolls.” The assessments were contested by IFMS, and a stipulation was entered into that the properties were exempt from local property *452 taxes under N.J.S.A 54:4-4.4. In 1969, the city and IFMS entered into “an arrangement” whereby annual contributions for services rendered were made by the property owner to the city.
On November 15, 1990, IFMS submitted an initial statement under N.J.S.A. 54:4-4.4 for each of the four properties. Paragraph 11(d) of the application form reads as follows: “If improved with structures or other facilities, state number and size of buildings, nature of other facilities and the specific use of each.” In response to this question, for each property, the taxpayer submitted the following information:
1. for block 121, lot 25.04: “One building (11 rooms)—vacation residence for missionaries;”
2. for block 121, lot 25.03: “One building (6 rooms)—vacation residence for missionaries;”
3. for block 121, lot 25.02: “Duplex in rear (14 rooms); one building fronting on street (6 rooms); used as vacation residence for missionaries;”
4. for block 121, lot 25.01: “One building (8 rooms); used as vacation residence for missionaries.”
Paragraph 12(a) of the statement form reads as follows: “Use(s) to which property is put: (a) Property is used as a,” with the applicant to describe the use. Each of the four statements contains the same response: “Vacation residence for missionaries.”
IFMS first contends that the prior history of exempt status and the agreement relating to contributions towards municipal services bind the city to continue the exempt status of the four properties. This contention is rejected. Each tax year is a separate year for local property tax purposes, and each tax year is a separate cause of action with regard to a challenge to the assessment of real property. “Each annual assessment of property for tax purposes is separate and distinct from the assessment for any other year.” Jackson Tp. v. Marsyll of B.B., Inc., 3 N.J. Tax 386, 389 (Tax 1981). “In view of the changing facts which an assessor may face from year to year, the correct assessment is not *453 determined until October 1 of the pretax year----” Ibid. No agreement enforceable against a municipality with regard to an assessment for a given tax year can be entered into prior to October 1 of the pretax year. Cf. Boys Club of Clifton, Inc. v. Tp. of Jefferson, 72 N.J. 389, 405, 371 A.2d 22 (1977) (An owner is not excused from filing an appeal even though a judgment of exemption had been entered for the prior year.).
IFMS also relies on two provisions of N.J.S.A. 54:4r-3.6 in support of its position that the subject properties are exempt from local property taxation. The first says that: “all buildings actually used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children” are exempt from local property taxation. The second provides that: “all buddings actually and exclusively used in the work of associations and corporations organized exclusively for religious or charitable purposes” are exempt from local property taxation.
The first provision requires the following:
1. that the building be actually used in the work of the taxpayer;
2. that the taxpayer be organized exclusively for the moral and mental improvement of men, women and children; and
3. the buildings, or lands on which they stand, or the entity using and occupying them must not be conducted for profit.
The second provision requires the following:
1. the buildings must be actually and exclusively used in the work of the taxpayer;
2. the taxpayer must be organized exclusively for religious or charitable purposes; and
3. the buildings, or lands on which they stand, or the entity using and occupying them must not be conducted for profit.
With regard to the “organized” requirement of the two statutory provisions, “organizations whose work is for the public *454 good and whose programs and activities are open to the general public are within the moral and mental improvement exemption.” Church Contribution Trust v. Mendham Bor., 9 N.J. Tax 299, 311 (Tax 1987), aff'd as mod., 224 N.J.Super. 643, 541 A.2d 249 (App.Div.1988). See Paper Mill Playhouse v. Millburn Tp., 95 N.J. 503, 472 A.2d 517 (1984) (exemption applied to community theatre group); Bloomfield v. Academy of Med. of N.J., 47 N.J. 358, 221 A.2d 15 (1966) (exemption applied to an organization of physicians and dentists which operated a medical library and sponsored symposia on medical issues, both open to and attended by members of the general public); Elizabeth v. Bayway Community Center, 19 N.J.Misc. 263, 18 A.2d 558 (Bd. of Tax Appeals 1941) (exemption applied to community center providing a “multitude of activities” for the benefit of working class families at little or no charge). The term “charitable purpose” denotes the accomplishment of objectives that are beneficial to the community. Church Contribution Trust v. Mendham Bor., supra at 312. “[Ojrganizations whose purpose is to promote the welfare of their members are benevolent, but not charitable.” Kirby v. Columbian Institute, 101 N.J.Super. 205, 209, 243 A.2d 853 (Cty.Ct.1968) (a nonprofit corporation, not organized exclusively for charitable purposes, does not enjoy charitable immunity from tort liability under N.J.S.A 2A:53A-7).
IFMS is a nonprofit corporation. However, it is not “organized exclusively for the moral and a mental improvement of men, women and children” nor “organized exclusively for religious or charitable purposes.” IFMS was formed for general and medical missionary purposes, for an education purpose and to engage in benevolent and charitable activities. However, its certificate of incorporation also contains in it as a purpose for which the corporation was formed the following language: “to establish and maintain homes or residence [sic ] in the State of New Jersey and elsewhere for the free use of missionaries on temporary leave of absence form [sic ] their work.” A corporation organized for the purpose of providing residences for people on temporary leave from their work cannot be said to be organized exclusively for exempt puiposes. People on leave from their work are not *455 performing their work, and hence are not engaging in any religious or charitable activities or in any activities for the moral and mental improvement of men, women and children. The taxpayer does not, therefore, qualify as an owner of exempt property under the statute because it is not organized exclusively for the moral and mental improvement of men, women and children, nor is it organized exclusively for religious or charitable purposes. “The fact of incorporation under the non-pecuniary act is not conclusive proof that the corporation is a charitable institution. The facts of each case determine the character of the corporation.” Dana College v. State Bd. of Tax Appeals, 14 N.J.Misc. 308, 310, 184 A. 412 (Sup.Ct.1936), aff'd, 117 N.J.L. 530, 189 A. 620 (E. & A. 1937). Defendant corporation’s property is therefore not entitled to exemption from local property taxation.
In their briefs, however, both parties assumed that the corporation qualified under N.J.S.A. 54:4-3.6, and they focused on the use of the properties. An examination of their arguments is in order because of the use of shore properties by charitable organizations.
In challenging the exemption granted by the Atlantic County Board of Taxation, the city relies primarily on the case of Harvey Cedars Bor. v. Sisters of Charity of St. Elizabeth, 163 N.J.Super. 564, 395 A.2d 518 (App.Div.1978). In that case, the Division of Tax Appeals granted tax exempt status for all the land and buildings of the Sisters of Charity of St. Elizabeth except for a three-acre parcel. The property in question was composed of a complex of buildings on an 11-acre parcel of land. The property owner was a religious corporation whose object was: “[T]he instruction and education of youth, the erection and maintenance of hospitals for the sick and destitute, and affording and rendering assistance to the poor and destitute.” Id. at 566, 395 A.2d 518 The activities of the property owner were not conducted at the property but at other locations where schools, a children’s residence and a hospital were maintained and operated. At these facilities, nuns, priests and nurses were assigned to carry on the charitable work of the corporation. The subject property was mainly utilized for rest and relaxation by the nuns and the clergy *456 in the summer season. The property was used for both religious retreats and vacation purposes. In the off season, some of the buildings in the complex were used for religious retreats and meetings by clergy and lay groups and organizations. The property also had a residence for the administrator who lived on the property all year round and a chapel designed and used for worship with regular masses for the public during the summer season.
The Appellate Division said:
N.J.S.A 54:4-3.6 provides in pertinent part that ail buildings “actually and exclusively used ... for religious, charitable or hospital purposes,” the land whereon they are erected and “which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed 5 acres in extent” are entitled to tax exemption. [Id. at 568, 395 A.2d 518.]
The court then concluded that the statutory test of use exclusively for religious or charitable purpose was not met for any of the buildings except the chapel. It said that statutes granting exemption from taxation must be strictly construed against those claiming exemption and that N.J.S.A 54:4-3.6 required that the actual land and buildings be used exclusively for the enumerated purposes. It then set forth the test to be employed, and said: “The test to be employed in determining whether property is ‘actually and exclusively used’ for a tax exempt purpose is whether the property is ‘reasonably necessary’ for such purpose.” Ibid. (quoting City of Long Branch v. Monmouth Medical Center, 138 N.J.Super. 524, 532, 351 A.2d 756 (App.Div.1976), aff'd, 73 N.J. 179, 373 A.2d 651 (1977)). The court concluded that the substantial use of the property as a summer residence or vacation place for nuns and others who do charitable work elsewhere mandates that the property be denied exemption although it is used in part for religious retreats. “Providing vacation facilities can simply not be viewed as reasonably necessary for the work of the organization.” Id. at 568-69, 395 A.2d 518. The court said that the status or vocation of the owners or occupiers of property does not determine whether the property is exempt from local property taxation. “[Rjesidences for personnel or religious organizations at a great distance from their place of work and not necessary for *457 the accomplishment of the purposes of the charity are not entitled to tax exemption.” Id. at 569, 395 A.2d 518. The court concluded that, except for the chapel and land necessary for the chapel, the property was not entitled to exemption from local property taxation.
In arguing to the contrary, IFMS relies primarily on Summit v. Overlook Hospital Ass’n., 4 N.J.Tax 183 (Tax 1982), aff'd, 6 N.J.Tax 438 (App.Div.1984) and Perth Amboy General Hospital v. Perth Amboy, 176 N.J.Super. 307, 422 A.2d 1331 (App.Div.1980). In the Overlook Hospital Ass’n. case, the court held that furnishing housing facilities to resident physicians, interns and nurses on a hospital staff is reasonably necessary for the proper and efficient operation of the hospital. The court concluded that all of the residences, even though some were at a distance from the hospital itself, were exempt from local property taxation because they were reasonably necessary for the functioning of the hospital in providing medical care and in teaching physicians and support medical personnel. The court did conclude, however, that the residence of the mechanical maintenance man was not exempt. The basis of the result in Overlook Hospital Ass’n. was that the hospital’s providing housing to physicians, nurses and other medical support personnel was necessary in order for the hospital to function and carry out its purposes.
In Perth Amboy General Hospital v. Perth Amboy, supra, the Appellate Division affirmed an exemption from local property taxation for 20 condominium units located a mile and one-half from the hospital and for six residential units in the immediate vicinity of the hospital. The condominium units were purchased to house resident and intern physicians and their families. The city argued that: (1) the 20 condominium units owned by the hospital were not actually and exclusively used in the work of the hospital; (2) because of the distance of the condominium units from the hospital, they were not reasonably related to a hospital purpose; and (3) since the units were condominium units there could not be actual and exclusive use for hospital purposes as required by N.J.S.A 54:4-3.6:
*458 In concluding that the condominium units were entitled to exemption from local property taxation, the Appellate Division considered that adequate housing in the general area of the hospital was difficult to obtain and that, because, among other things, there is increased sociological emphasis on both preventive and curative health care, more must be considered than mere distance of residence facilities from the hospital in determining whether the facilities are exempt as being used for hospital purposes. The court concluded that the residences were being used for a “hospital purpose.” The court also said that a condominium unit was, under the law, a single and separate parcel of real property and the fact that, as the city argued, the hospital as a condominium owner shared the common elements with the other condominium unit owners was not sufficient to deny the hospital exemption from local property taxation. Finally, the court held that the six properties in the immediate vicinity of the hospital were also exempt because they satisfied the test of actual and exclusive hospital use. In effect, the court was saying the housing was necessary for the functioning of the hospital and that if the hospital did not supply such housing in the general proximity of the hospital, it could not carry out its purposes and function as a hospital.
Defendant also relies on several other cases. One is Sisters of Charity v. Chatham Tp., 52 N.J.L. 373, 20 A. 292 (E. & A.1890). In that case, the Court granted exemption from local property taxation to the property because it was used “to instruct the poor, to nurse the sick and to support the orphan.” Id. at 375, 20 A. 292. From the opinion, it is clear that the subject corporation was organized exclusively for charitable purposes and that, as the Court said, the corporation “has literally and exclusively carried into effect the purposes for which it was thus created.” Id. at 375, 20 A. 292. The decision in the case dealt more with statutory and constitutional interpretation than with issues of corporate organization and property use. The Court concluded that a constitutional amendment did not impact on the statute under which the plaintiff sought exemption from local property taxation. Id. at 377, 20 A. 292.
*459 In Litz v. Johnston, 65 N.J.L. 169, 46 A. 776 (Sup.Ct.1900), there was no issue as to corporate organization or use of property. The exemption had apparently been denied on the basis of the legal title holder. In granting exemption, the court said that the fact that legal title to the property was in a trustee and that the beneficiary of the trust was a corporation organized under the laws of another state did not require the denial of an exemption from local property taxation. Id. at 170, 46 A. 776.
In Congregation St. Vincent de Paul v. Brakeley, 67 N.J.L. 176, 50 A. 589 (Sup.Ct.1901), the court held, based on the Litz case, that property owned by a corporation formed in another state was nevertheless entitled to exemption from local property taxation if it otherwise qualified for such exemption. The court also dealt with the issue of the amount of land which was exempt and concluded that the improvement and only some undetermined portion of the land were exempt. It required additional proofs on the amount of land necessary for the “fair enjoyment” of the building. In describing the nature of the charitable activities of the plaintiff, the court indicated that the building was used, among other things, “as a summer home of recreation.” Id. at 177, 50 A. 589.
However, it does not appear from the opinion that the use of the building was challenged in any way so that the holding related to the state of incorporation of the plaintiff and the amount of land to be exempt. In any event, permitting a building which is used for recreation purposes to be exempt from local property taxation is contrary to the Appellate Division’s decision in Harvey Cedars Bor. v. Sisters of Charity of St. Elizabeth, supra.
Statutes granting exemption from taxation are strictly construed against those claiming exemption. Construing the two provisions of N.J.S.A 54:4-3.6 invoked by defendant in this manner requires that it prove that the properties are “actually used ... for the moral and mental improvement of men, women and children” or are “actually and exclusively used ... for religious or charitable purposes.” The burden of proof in a tax exemption *460 case is always on the party claiming the exemption. Princeton Univ. Press v. Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961).
The subject properties are not, however, actually used for the moral and mental improvement of men, women and children nor are they actually and exclusively used for religious or charitable purposes. The cottages, as they are called by defendant, are used for vacation residences for retired and active missionaries, mainly during the summer months, when living at the shore is most attractive. They are also used for rest and relaxation—if that is different from vacation use, for sabbatical use and for occupancy by persons waiting reassignment. The properties, used in these different ways, are not “reasonably necessary” for any tax-exempt purpose. They are neither actually nor actually and exclusively used for any tax exempt purpose defined in N.J.S.A. 54:4-3.6. See Harvey Cedars Bor. v. Sisters of Charity of St. Elizabeth, supra, 163 N.J.Super. at 569, 395 A.2d 518. While in residence, the occupants are not engaged in the religious or charitable work of them organizations. Contrary to defendant’s position, both Overlook Hospital Ass’n., supra and Perth Amboy General Hospital, supra mandate this result as well. In both of those cases residences were held exempt from local property taxation because they were occupied by persons engaged in an exempt purpose, namely hospital use, while they were in residence. To emphasize the required relationship between use by a resident and an exempt activity, the residence of the hospital mechanical maintenance man was not exempt from taxation in Overlook Hospital Ass’n., supra, 4 N.J.Tax at 193.
Another case on which defendant relies, Asbury Park v. State Div. of Tax Appeals, 41 N.J.Super. 504, 125 A.2d 411 (App.Div.), certif. denied, 22 N.J. 574, 126 A.2d 910 (1956), does not support its position. In the Asbury Park case, the Salvation Army Retired Officers’ Home owned by the Salvation Army, a religious corporation of New Jersey, was held to be exempt from local property tax. The court found that the property primarily housed officers pensioned and retired because of old age or infirmity and was also available for employees under the same conditions. The *461 home cared for the neediest cases. It was used to care for sick officers and employees and for “those who arrive at old age in need after having given their lives in the service of [the army’s] charitable endeavors.” Id. at 506, 125 A.2d 411. The court held that the “operation of the home constitutes the work of the religious corporation under consideration, or rather an important part of its work; and the building and land of the home are ‘actually and exclusively used’ in that work.” Id. at 507, 125 A.2d 411. However, as a result of the decision in Harvey Cedars, property used for vacation and similar purposes is not actually and exclusively used for a charitable or religious purpose. The As-bury Park case is “plainly distinguishable” from the present ease because in that case, the property was in fact used for one of the charitable purposes of the Salvation Army, namely caring for the infirm and the aged. The subject properties, however, are not used in the religious or charitable purposes of the entities which use them.
To the same effect is Teaneck Tp. v. Lutheran Bible Institute, 20 N.J. 86, 118 A.2d 809 (1955), in which homes provided by a religious school to ordained ministers who taught at the school were held to be not exempt from local property taxation. The homes were two miles from the school. The Court said that in matters of local property taxation, “the use to which the property is devoted is the essential consideration and not the character or status of the owner.” Id. at 89-90, 118 A.2d 809. The buildings were not used exclusively for the religious purposes of the owner. The buildings were used predominantly as homes for the faculty members and their families, and their use did not come within any statutory provision allowing an exemption. The Court also disapproved of Congregation of Mission of St. Vincent de Paul v. Brakeley, supra, in saying that the use to which a property is put and not the charitable purpose of the owner is the correct consideration in determining if property is exempt from local property taxation, thus presaging the result in Harvey Cedars. The Court emphasized “the rule of construction that all doubts are resolved against those seeking the benefit of a statutory exemption which in turn is based upon the fundamental principal [sic ] of equality of *462 the taxation burden.” Id. at 90, 118 A.2d 809. To rule that the homes were exempt, the court said, “would do violence to the rule of construction concerning exemptions which we believe to be well-founded in principle.” Id. at 91, 118 A.2d 809.
For the reasons already given, the subject properties also do not qualify for exemption under so much of N.J.S.A 54:4-3.6 which provides for exemption for:
all buildings owned or held by an association or corporation created for the purpose of holding the title to such buildings as are actually and exclusively used in the work of two or more associations or corporations organized exclusively for the moral and mental improvement of men, women and children; all buildings owned by a corporation created under or otherwise subject to the provisions of Title 15 of the Revised Statutes or Title 15A of the New Jersey Statutes and actually and exclusively used in the work of one or more associations or corporations organized exclusively for charitable or religious purposes____
Counsel for the city shall submit an order under R. 4:42-l(b) providing that all four properties are subject to local property taxation. The order shall also contain a case management schedule for the trial on the quantum of the assessment. The schedule will be fixed after a conference among counsel and the court.