TEXTILE RESEARCH INSTITUTE, A CORPORATION OF NEW JERSEY, APPELLANT, v. TOWNSHIP OF PRINCETON, A MUNICIPAL CORPORATION OF NEW JERSEY, AND DIVISION OF TAX APPEALS, DEPARTMENT OF THE TREASURY, STATE OF NEW JERSEY, RESPONDENTS.

Argued May 8, 1961—Decided June 30, 1961.

*Mr. Chester Mueller* argued the cause for appellant.

*Mr. Gordon D. Griffin* argued the cause for respondent, Township of Princeton.

Mr. *Theodore I. Botter,* Assistant Attorney General, filed a statement in lieu of brief for respondent, Division of Tax Appeals, Department of the Treasury, State of New Jersey (*Mr. David D. Furman,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

SCHETTINO, J. The Division of Tax Appeals denied the Textile Research Institute tax exemption under *N. J. S. A.* 54:4–3.6, from taxes assessed by Princeton Township for the year 1957 on land, improvements and personal property owned and used by the Institute. Plaintiff appealed to the Appellate Division and before argument there, we certified the cause on our own motion.

The Legislature has exempted from local property taxation buildings of New Jersey non-profit corporations which are "actually used for colleges, schools, academies or seminaries." *N. J. S. A.* 54:4–3.6. The sole issue for determination is whether the Textile Research Institute is a "college" within the meaning of the statute?

The Textile Research Institute is incorporated as a non-profit organization of the State of New Jersey under the provisions of *R. S.* 15:1–1 *et seq.* The Institute consists of company members and personal members. An active company member must be a corporation, company or firm engaged in the production or utilization of textiles, textile supplies, textile raw materials, textile products, textile machinery or equipment, or engaged in the utilization, manipulation or chemical or physical treatment of fibers, or engaged in research or education related to these fields. There are approximately 90 company members, which pay annual dues ranging from $200 to $2,250 based upon their net textile shipments. Personal members, 300 in number, pay $20 annually.

The Institute is governed by a board of trustees which manages the corporation's business, property and affairs, makes and controls its policies, and has final say on all major fiscal matters. The board consists of 30 trustees plus

*ex officio* members, who are past presidents and past chairmen of the board continuing to be associated with active member companies. The trustees are elected by the company membership only, each company member having one vote regardless of the dues contributed by it. By contrast personal members have no voting privileges. The board of trustees elects from its membership a chief executive officer who becomes chairman of the board and who may also be president. The board also elects a vice-president and a treasurer from its membership, and a secretary who is not necessarily a member of the board, but is a full-time employee who serves as executive secretary of the Institute and assistant treasurer.

The certificate of incorporation of the Institute sets forth a threefold purpose:

"To provide instruction, to conduct research and to disseminate knowledge in the arts, sciences, technologies, and economics, particularly those relating to the field of textiles."

The Institute provides instruction by offering fellowships and by making available laboratory facilities to predoctoral and postdoctoral students in the textile field. The fellowship program is executed by a unique cooperative arrangement with Princeton University. The Institute selects outstanding bachelor degree graduates capable of satisfying the admission requirements of the Graduate School of Princeton University and designates these predoctoral men as TRI Research Fellows. They register as graduate students of Princeton University and take the regular lectures and examinations of that institution. Their thesis research, however, is conducted in the Institute laboratories under the joint supervision of Institute staff scientists and Princeton faculty members. Upon graduation, a predoctoral fellow receives the appropriate advanced degree of Princeton University and a certificate entitled "Graduate Fellow of Textile Research Institute." Approximately 54% of the Institute graduates take positions on the research staffs of member companies.

Postdoctoral fellows are not formally affiliated with Princeton University. They are invited to the Institute to do research and upon departure receive the same certificate as predoctoral fellows. Member companies supporting postdoctoral fellowships have the privilege of specifying the subject of the fellow's research. This privilege is not enjoyed in the case of the predoctoral participating fellowship program.

The second major objective of the Institute is to conduct research in the textile field. The research program falls into four main categories: (1) general research supported by company membership dues, fellowships and grants; (2) special projects supported by groups of company members and trade groups; (3) government research contracts; and (4) research projects supported by individual member companies.

The general research program constitutes the basic research efforts of the Institute. Assignments are selected according to the interests of member companies roughly in proportion to dues contributed and with a view to the potential field of application.

A large portion of the Institute's research effort is in the area of group-supported special projects, which are set up when a group of member companies with common interests desires intensification of the Institute's efforts in its field. Each sponsor appoints a technical representative who serves on the project advisory committee, which meets regularly to discuss results and to plan the future program. In contrast to the general research program, the assignments of the group-supported projects generally relate to one type of fiber or to some special process or problem of the textile industry. The results of these projects are published, but at the sponsors' request the Institute will withhold publication for a period of two years.

A portion of the Institute's research effort is also devoted to contracts with government agencies. Often the program is so closely related to a group-supported project that the two are executed as integral phases of a single program.

Finally, a research project may be supported by an individual member company. The Institute does not undertake testing or trouble-shooting assignments for its members, but a member company may take advantage of the Institute's facilities and experienced staff to perform research related to its raw materials, processes and products. This avoids heavy expenditures and delays involved in setting up its own facilities and hiring a special staff. Significant results must be published after a delay of two years which may be requested by the sponsor. During the two-year period, these results are accessible only to the sponsor to the exclusion of others, even members.

The third major objective of the Institute is to disseminate results of its textile research. This is accomplished chiefly by the publication of a technical periodical, *Textile Research Journal,* and a monthly report, *Notes on Research.* The *Journal* is available to the general public, but the *Notes on Research* is sent to member companies only. The *Notes* consists of research results in condensed form and appears far ahead of final publication in the technical literature, thus providing members with current results of Institute research. Company member representatives also learn of and use research results through consultation with the Institute staff and by attending seminars at the Institute.

The most recent interpretation of "college" in the statutory sense was given in *Township of Princeton v. Institute for Advanced Study,* 59 *N. J. Super.* 46 (*App. Div.* 1960). Explaining its view that the Institute is a college, the court stated, at *p.* 55:

"It fits well within the frame of those institutions which, for over a century (see *L.* 1851, *p.* 271, § 5 (II)), have been the particular concern of the Legislature in extending tax benefits to colleges, schools, academies and seminaries, thereby encouraging the cause of education and research. It is reasonable, if not indeed compelling, that this court give effect to the obvious purpose of the Legislature."

The court there found that the word "college" encompasses many and various types of institutions. But the word

"college" does not embrace an organization which is controlled by a particular profit-making segment of society and which is devoted principally and primarily to research for the benefit of that industry. The power of member companies to elect the board of trustees and to vote at business meetings, and company participation in various advisory committees, result in control of policy and programing of the Textile Research Institute. The company members' privilege to consult with the Institute staff, their participation in group-supported special projects, the sponsorship of special projects by individual companies and their receipt of advanced and special information therefrom, their sponsorship of participating fellowships, their participation in Institute seminars and meetings, and the advantages of the *Notes on Research* lead to the inescapable conclusion that the Institute is primarily designed to benefit the textile industry.

All these factors compel the view that the Textile Research Institute is not an institution of learning as traditionally understood, and therefore is not a "college" within the meaning of *N. J. S. A.* 54:4–3.6.

Appellant protests that an examination of the membership and control of the Institute violates the principle that for tax purposes property may be classified according to characteristics or uses but not as to ownership. Appellant apparently misconstrues the purpose of the examination. We do not embark on any process of classification. Ownership is extremely relevant in determining the nature and function of the organization under scrutiny and is examined merely to reveal the use to which the property is being put. See *Township of Teaneck v. Lutheran Bible Institute,* 20 *N. J.* 86, 89–90 (1955).

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.