ANDREW, J.T.C.
In this real property tax matter, plaintiff, Secondary School Admission Test Board, Inc., claims that the property it owns in the defendant municipality, Princeton Borough, is exempt from local property taxation for tax year 1992 in accordance with two provisions in the exemption statute, N.J.S.A 54:4-3.6. Specifically, plaintiff maintains that, pursuant to the exemption statute, its property is either: (1) “actually used for colleges, schools, academies or seminaries,” or alternatively, (2) is “actually used in the work of ... [a corporation] organized exclusively for the moral and mental improvement of men, women and children,” and consequently, is exempt from the property tax which defendant seeks to exact. See N.J.SA 54:4-3.6. Defendant, of course, denies that plaintiff meets either exemption provision.
The property involved in this proceeding is known and designated as Block 37.01, Lot 54 on the tax map of Princeton Borough and is commonly identified as 12 Stockton Street. The property was assessed for the 1992 tax year at:
Land $ 76,500
Improvements 295,900
Total $372,400
This assessment was affirmed by the Mercer County Board of Taxation. Plaintiff did not, before the county board, and does not, before me, challenge the amount of the assessment. Instead, plaintiffs only claim is for exemption from local property taxation.
At the request of the parties, and pursuant to R. 8:8—1(b), this matter was submitted to me for decision without trial based upon a stipulation of facts and briefs. The stipulated facts are as *470 follows. Plaintiff is a national nonprofit corporation organized under the laws of the State of New York in 1966 and registered in New Jersey in 1988. Plaintiffs certificate of incorporation sets forth the relevant purposes of the corporation as follows:
(a) To provide effective and practical uniform test programs for use in screening applicants for admission to and placement in secondary schools and the latter years of elementary schools, to furnish educational guidance to such applicants, and to carry on research in such matters.
(d) The corporation shall in no event be operated for profit and no' part of its earnings or net income shall inure to the benefit of any individual, and no officer, member or employee shall receive or be entitled to receive any pecuniary profit except as reasonable compensation for services rendered to the corporation.
The bylaws of plaintiff state its corporate purposes to be:
committed to providing a highly secure, valid, reliable test to be used as one measure for admission to schools and placement in schools. It is committed to providing opportunities for the professional growth of educators in admission. It is committed to serving students, parents and schools.
Plaintiffs certificate of incorporation also provides that, upon plaintiffs dissolution, its assets must be turned over to a charitable organization and cannot inure to the benefit of any person. Any accumulation of surplus, therefore, cannot benefit any person, group of persons, or for-profit organization.
In plaintiffs brief, counsel for plaintiff explains that plaintiff was originally designed “to simplify the admission process and to streamline the work of interviewing and reading the files of students from different educational backgrounds.” Apparently, plaintiffs original task was to oversee the production and administration of a standardized secondary school admissions test in order to facilitate the application process for students and plaintiff’s member schools. Counsel for plaintiff notes that plaintiff’s membership consists of educators from approximately 650 secondary schools.
According to plaintiff’s bylaws, membership in plaintiff may be either voting or nonvoting. The voting members, however, elect plaintiff’s board of directors who, pursuant to plaintiffs bylaws, manage the business and affairs of plaintiff. The bylaws also *471 make it perfectly clear that directors need not be members of plaintiff.
Plaintiff asserts that students benefit from the standardized test it sponsors because the test provides a means for students to understand the type of secondary school for which they are best suited. The test which plaintiff oversees is produced by Educational Testing Service (ETS), a nonprofit organization[1] located in Princeton, New Jersey. Plaintiff relates that it permits ETS to draft the test and tabulate the test results because this procedure allows plaintiff to perform other “education-related functions.”
Plaintiff produces a number of publications for both school admissions officials and students, including a quarterly admissions newsletter, an annual bulletin which addresses topical educational issues such as child development, and informational material for interested students and their parents regarding testing and procedures. Additionally, plaintiff conducts seminars and training institutes for educators in school admissions both in this country and abroad. Plaintiff also presents two annual awards to individuals who have shown outstanding leadership in school admissions and dedication to the service of plaintiff.
Plaintiff characterizes its mission as serving as “a nonprofit extension of its member schools” by helping students considering secondary schooling to “[map] a plan for their education.” Plaintiff points out that fees for its admissions test are waived for needy students. Lastly, plaintiff stresses that its staff and volunteer officers, committee members and directors are all educators.
It is plaintiffs position that it does not merely oversee the production and administration of a secondary school admissions test, but instead, plaintiffs purpose is to ensure each student attends the appropriate secondary school, thereby ensuring, as *472 plaintiff contends, “that the final goal of admissions—education— is fulfilled.”[2]
Defendant maintains that plaintiff is essentially nothing more than an administrative tool for its private member secondary schools, designed to create and administer a standardized admissions test, and, as such, does not qualify for property tax exemption.
Curiously, the stipulation of facts submitted by the parties, does not say how plaintiff employs the subject property in its work or if it is so employed in its work. The stipulation merely notes that the subject “consists of 2200 square feet of land and one building, a converted residence.” Other than pointing out that the subject property is exclusively used by plaintiff, the stipulation, as well as the entire record in this case is silent as to plaintiffs particular use of the subject property.[3]
*473 Preliminarily, it should be observed that tax exemption statutes are strictly construed against those claiming exemption because of the compelling public policy that all property bear its fair share of the burden of taxation. Princeton Univ. Press v. Princeton Bor., 35 N.J. 209, 214, 172 A.2d 420 (1963). Strict construction, however, does not require a rigid interpretation that does not serve the apparent legislative purpose, rather a statute is to receive a reasonable construction. Alexander v. N.J. Power & Light Co., 21 N.J. 373, 378, 122 A.2d 339 (1956).
Taxation remains the rule, however, and exemption is the exception to the rule, and consequently, the taxpayer must carry the burden of proving entitlement to tax exemption. Jamouneau v. Div. of Tax Appeals, 2 N.J. 325, 66 A.2d 534 (1949).

I.

Plaintiff, first, claims an exemption from local property taxation in accordance with N.J.S.A. 54:4-3.6 (hereinafter § 3.6) which, insofar as pertinent to this claim, states:
The following property shall be exempt from taxation under this chapter: all buildings actually used for colleges, schools, academies or seminaries____ The foregoing exemption shall apply only where the association, corporation or institution claiming the exemption owns the property in question and is incorporated or organized under the laws of this State [4] and authorized to carry out the purposes on account of which the exemption is claimed____
[Emphasis added]
As can be readily seen, the statutory criteria for exemption under this portion of the § 3.6 exemption statute is twofold. First, the organization claiming the exemption must own the property in question and be “authorized to carry out the purposes on account of which the exemption is claimed.” Second, the building or buildings at issue must “actually [be] used for colleges, schools, academies or seminaries.” The first requisite relates to *474 the nature and function of the organization making the exemption claim, while the second relates to the use of the property.
Plaintiff maintains that it meets both of these requirements because it is “authorized to do business in New Jersey” and it uses the property at issue for “school” or “educational” purposes. Initially, I find and conclude that plaintiff does not meet the requisite test for exemption under this provision of § 3.6 because plaintiff is not “authorized to carry out the purposes on account of which the exemption is claimed.”
Apparently, plaintiff misperceives the nature of this requirement in the statute. Plaintiff believes that all it need demonstrate, in satisfaction of this requisite for exemption, is that it is authorized to do business in New Jersey. The statutory requisite is not whether plaintiff is authorized to do business in this State, but rather, whether plaintiff is authorized to carry out the purposes for which it claims exemption. Specifically, the first question to be resolved in this case is whether plaintiff is authorized to carry out the purposes of a college, school, academy or seminary.[5] A review of plaintiff’s certificate of incorporation and bylaws reveals that it is not authorized to act as any one of the enumerated educational institutions, and thus, cannot claim an exemption for its building under this statutory provision.
This conclusion is fully supported by the Appellate Division opinion in Intercare Health v. Cedar Grove Tp., 12 N.J.Tax 273, 275 (App.Div.1991). In Intercare Health, plaintiff, Hartwyck West Nursing Home, the owner and operator of a nursing and convalescent home, claimed an exemption from property taxation for its property on the basis that it was indirectly used “exclusively for hospital purposes” under § 3.6, because plaintiff’s nursing home enabled hospitals to relocate patients who no longer needed acute nursing care. The Appellate Division, in its per curiam *475 opinion, affirmed the Tax Court’s decision denying an exemption on the basis that the building for which the exemption was sought was not an integral part of a functioning hospital. Ibid.
Additionally, however, and most important, the Appellate Division went on to point out that the stated corporate purposes set forth in the certificate of incorporation of plaintiff, Hartwyek West Nursing Home, did not include operating a hospital. Therefore, according to the Appellate Division, Hartwyek West Nursing Home failed “to satisfy the statutory requirement that the corporation claiming the exemption must have been incorporated for hospital purposes.” Ibid. Here, plaintiff has failed to demonstrate that it is authorized to carry out the purposes of a “college, school, academy or seminary.”
Plaintiff maintains however, that its property is used solely to further the educational purposes of its member schools, and therefore, meets the statutory exemption provision. Furthering the educational purposes of its member schools no more meets the statutory requirement in this case than providing a benefit to hospitals did in Intercare Health v. Cedar Grove Tp., supra.
Plaintiff points to a number of cases to support its position which are exemplified by Pingry Corp v. Hillside Tp., 46 N.J. 457, 217 A.2d 868 (1966). See also Textile Research Institute v. Princeton Tp., 35 N.J. 218, 172 A.2d 417 (1961) and Princeton Tp. v. Institute for Advanced Study, supra.
In Pingry Corp., the issue, as framed by our Supreme Court, was whether seven residences used to house the headmaster and the faculty at the Pingry School, a country day school, were exempt from taxation under § 3.6 because they were actually used for school purposes. 46 N.J. at 461, 217 A.2d 868. The Court concluded that such housing facilitated obtaining and retaining competent faculty members and, as such, was reasonably designed to further the educational purposes of the school, and therefore, should be tax exempt. Id. at 464-65, 217 A.2d 868.
Plaintiff argues that, since it “assists educators in determining which students will benefit from their programs and assists stu *476 dents in mapping a plan for their education,” it, like the seven faculty houses in Pingry Corp. v. Hillside Tp., “further[s] the educational purposes of the school,” id. at 463, 217 A.2d 868, and consequently, plaintiffs building should also be tax exempt. What plaintiff fails to see is that the issue in Pingry Corp. was the use of the buildings, not whether the exemption claimant was authorized to carry out the purposes of a school. Clearly, the Pingry School had the appropriate authorization in its corporate charter.
Plaintiff also maintains that, since it is solely and exclusively controlled by the educators and educational consultants of its member schools, which schools are themselves nonprofit organizations,[6] its property should be tax exempt. As support for this proposition, plaintiff makes reference to Textile Research Institute v. Princeton Tp., supra. In Textile Research Institute, the issue presented was whether the Textile Research Institute was a “college” within the meaning of § 3.6. The Institute’s certificate of incorporation revealed that it was organized for educational purposes but nevertheless was not a “college,” as that term is traditionally understood, because the Institute was controlled by the textile industry, a particular profit-making segment of society, and was devoted principally to research for the benefit of that industry. Therefore, the Institute’s real property was not tax exempt.
Plaintiff reasons that since it is controlled exclusively by educators and educational consultants, its property should be tax exempt. Plaintiff again misses the point. The exemption was denied in Textile Research Institute, not because of the control exerted by the textile industry, but because the claimant was not a college, school, academy or seminary, i.e., one of those four categories of educational institutions for which the Legislature has expressed a particular concern to thereby encourage education and research by extending tax benefits. See Princeton Tp. v. *477 Institute for Advanced Study, supra, 59 N.J.Super. at 55, 157 A.2d 136 (the issue confronting the court was whether the Institute for Advanced Study was, in fact, a “college,” one of the four educational institutions set forth in § 3.6).
Moreover, plaintiffs argument is not supported by the facts. Plaintiff is not controlled by a school, college, academy or seminary. There is no indication in plaintiffs certificate of incorporation or its corporate bylaws that it is “owned” by the member schools. There is no provision for stock or share ownership. As previously noted, membership in plaintiff may be either voting or nonvoting. The voting members elect plaintiffs board of directors who, in accordance with plaintiffs bylaws, manage the affairs and business of plaintiff. These directors need not be members. While plaintiff may be influenced by its member schools there is no indication that it is solely or exclusively controlled by these member schools.
Simply put, plaintiff is not “authorized to carry out the purposes on account of which the exemption is claimed,” and therefore, does not qualify for tax-exempt status under the “college, school, academy or seminary” exemption provision.

II.

Alternatively, plaintiff claims an exemption from local property taxation in accordance with a second provision in § 3.6 which states in pertinent part:
The following property shall be exempt from taxation under this chapter: ... all buildings actually used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children ... provided, ... the buildings or the lands upon which they stand ... are not conducted for profit____
[Emphasis added]
As can be readily observed, in order to obtain the claimed exemption, plaintiff must meet three criteria. First, plaintiff must be organized exclusively for the moral and mental improvement of men, women and children. Second, plaintiffs property must be actually used for the tax-exempt purpose. Third, the operation *478 and use of the property must not be for profit. Paper Mill Playhouse v. Millburn Tp., 95 N.J. 503, 506, 472 A.2d 517 (1984).[7]
There is no dispute in this case that plaintiff has satisfied the third requirement, in that plaintiff’s activities and its use of the subject property are not conducted for profit. Defendant, Princeton Borough, however, maintains that plaintiff fails to meet the other two criteria. For reasons to be hereinafter stated, I have concluded that plaintiff is not “organized exclusively for the moral and mental improvement of men, women and children,” the first requisite set forth above, and therefore, its claim for tax exemption on this basis must also fail.[8]
I have reached this conclusion for two reasons. First, even if one could characterize the purposes of plaintiff corporation as being partly concerned with the moral and mental improvement of men, women and children, that is not its exclusive object. As a matter of fact, moral and mental improvement of men, women and children is not even its primary object. Second, as explained in Church Contribution Trust v. Mendham Bor., 9 N.J.Tax 299, 308-11 (Tax 1987), aff'd as mod., 224 N.J.Super. 643, 541 A.2d 249 (App.Div.1988), the moral and mental improvement exemption is limited to organizations which directly rather than indirectly seek to uplift the general public morally and mentally. Plaintiff’s *479 activities contribute to society’s moral and mental improvement only indirectly.
With respect to the first reason, as the exemption provision clearly recites, the exemption claimant must establish that it is organized exclusively for the moral and mental improvement of men, women and children. Plaintiffs certificate of incorporation reveals that it is an organization primarily concerned with the professional interest of its members by providing “effective and practical uniform [admissions] test programs for secondary schools” and “to carry on research in such matters.” This primary object is echoed in plaintiffs bylaws in which plaintiff is shown to be “committed to providing a highly secure, valid, reliable test to be used as one measure for admission to schools and placement in schools.” Moreover, plaintiffs counsel, in his brief, maintains that plaintiffs mission “is to serve” and assist its member schools “with all aspects of their schools’ admissions functions.”
While plaintiff has functions and attributes which could be characterized as educational or mentally uplifting, these are secondary and peripheral to its main object. To be sure, plaintiffs activities confer a benefit on its member schools, particularly on educators in admissions, and on students and parents, but that benefit is not designed to uplift men, women and children morally and mentally.
Second, plaintiffs activities are not designed to directly uplift or improve, morally and mentally, the general public. See Church Contribution Trust v. Mendham Bor., supra. In Church Contribution Trust, Judge Lasser of this court reviewed the decisional law in both New Jersey and New York with respect to the moral and mental improvement exemption provision and concluded that the courts in both states have limited this exemption to:
organizations which directly benefit the general public by providing educational, cultural or civic programs. Organizations established to render professional services to individuals, such as counseling and therapy, although they may indirectly benefit the public have not been found exempt.
[ 9 N.J.Tax at 311]
*480 Plaintiffs primary purpose is to render professional services to individual member schools by providing a “highly secure, valid, rehable test to be used as one measure for admission” to those schools. It provides publications and workshops to train educators about admissions practices. Students take admissions tests, not for their education, but instead to establish which institution will accept them. Reports sent to those students concerning their performance on those tests are not designed to morally or mentally improve them. At best, these activities reflect an indirect moral and mental improvement to society in general. •
Plaintiff maintains, however, that “it serves the public at large through its full array of admissions activities” and relies upon the case of Bloomfield v. Academy of Medicine, 47 N.J. 358, 221 A.2d 15 (1966), to support its position. In Bloomfield, the exemption claimant was the Academy of Medicine of New Jersey, a nonprofit corporation, which was formed for the purposes of
pathological and anatomical study and investigation, and the advancement and promotion of medical and surgical science by such means as to them shall appear expedient and proper, and also maintenance of a public medical library.
[Id. at 362, 221 A2d 15]
The facts in Bloomfield demonstrate that the Academy maintained the largest medical library in New Jersey and that it was open to, and used by, the public. The building at issue served as the Academy’s administrative center for the educational courses which were conducted at various hospitals in this State. The Academy also conducted symposia open to, and attended by, the public on a wide range of medical subjects. In addition, the Academy published a bulletin with world-wide distribution which provided current medical information.
On the basis that the Academy performed “an important public service through its activities which promote ‘the moral and mental improvement of men, women and children,’ ” the Court concluded *481 that it was entitled to the claimed exemption. Id. at 366, 221 A2d 15.
Plaintiff stresses the similarities between it and plaintiff in Bloomfield, supra, arguing that both organizations conduct symposia, are supported by dues paid by members, publish bulletins for the benefit of members and make their benefits available to the public. However, as defendant correctly points out, plaintiff, in Bloomfield, conducted educational courses and püblic symposia on various medical topics. These symposia were not only open to the general public, they were also attended by the general public. Plaintiff cannot say the same of its seminars, which are limited in scope and focus to a very narrow segment of the populace, namely, educators in secondary school admissions. Though plaintiff apparently believes that “[t]he fact that [plaintiff’s] members are admissions officials and other educators and not the public at large is irrelevant,” clearly, the fact that the public at large reaped a direct benefit in the form of moral and mental improvement from plaintiff in Bloomfield was extremely relevant to the Court in reaching its conclusion.
Simply stated, plaintiff does not meet the first requirement for tax exemption, in that, it is not organized exclusively for the moral and mental improvement of men, women and children.
Since plaintiff has failed to justify its claim to tax exemption under either the “colleges, schools, academies or seminaries” classification or the “moral and mental improvement” category, for the reasons heretofore expressed, judgment will be entered affirming the Mercer County Board of Taxation’s denial of exemption for the 1992 tax year.

 It is assumed that ETS is a nonprofit organization but there is nothing in the record to establish this fact.

 Plaintiff points out that it is an exempt organization under section 501(c)(3) of the Internal Revenue Code and has so qualified since 1966. As this court noted in Planned Parenthood v. Hackensack, 12 N.J.Tax 598, 604 n. 4 (Tax 1992), federal income tax exemption standards have no relevance to state law governing property tax exemptions. See The Presbyterian Homes v. Division of Tax Appeals, 55 N.J. 275, 286 n. 3, 261 A.2d 143 (1970).

 The courts in this State have uniformly held that exempt status is contingent on the confluence of qualifying use and ownership on the assessment date. Jabert Operating Corp. v. Newark, 16 N.J.Super. 505, 508, 85 A.2d 216 (App.Div. 1951); Shelton College v. Ringwood, 48 N.J.Super. 10, 11, 136 A.2d 660 (App.Div. 1957); Schizophrenia Found, of N.J. v. Montgomery Tp., 6 N.J.Tax 439, 442 (App.Div.1984). Inasmuch as the record in this case contains no evidence of a qualifying use of plaintiff’s property, I have no factual basis for granting an exemption. See Weymouth Tp. v. Memorial Pk. Family Prac. Ctr., Inc., 7 N.J.Tax 589, 592-95 (Tax 1985) and New Brunswick v. Rutgers Community Health Plan, Inc., 7 N.J.Tax 491, 498 (Tax 1985), both holding that the claimant-taxpayer bears the burdens of producing evidence and persuasion to establish entitlement to tax exemption.
Plaintiff makes one reference in its brief to the fact that members of plaintiff held meetings at the subject property and that plaintiff hosted symposia at the property. This reference however, is not proof nor, if it were proof, would it establish qualifying use. I assume, however, for the purposes of this case, that plaintiff does employ its property in accordance with its stated purposes. I do so because I have concluded that plaintiff's claim for exemption must be denied for other more important reasons which will be stated hereinafter.

 The statutory requirement that the entity claiming exemption must be organized under the laws of this State is no longer applicable. See WHYY, Inc. v. Glassboro Bor., 393 U.S. 117, 89 S.Ct. 286, 21 L.Ed.2d 242 (1968).

 As revealed in Princeton Tp. v. Institute for Advanced Study, 59 N.J.Super. 46, 55, 157 A.2d 136 (App.Div.1960), the Legislature intended to encourage education and research by extending tax benefits to the four categories of educational institutions named in the exemption provision.

 Here, again, plaintiff’s counsel makes an assertion in his brief that is totally without support in the record. There is nothing in the record that even remotely demonstrates that any or all of plaintiff’s member schools are, in fact, nonprofit organizations within the meaning of the § 3.6 exemption provision.

 At the time of the decision in Paper Mill Playhouse, supra, N.J.S.A. 54:4-3.6 required that the buildings be "actually and exclusively used” in the work of organizations claiming exemption under the moral and mental improvement classification. The statute was amended by L.1985, c. 395 (effective December 20, 1985) to delete the "exclusive use” requirement and allow such organizations to receive a partial tax exemption for buildings partially used for the exempt purpose. The current requisite is "actual use" for the exempt purpose.

 Having concluded that plaintiff is not organized exclusively for the moral and mental improvement of men, women and children, it becomes unnecessary to address the third criterion, i.e., whether the subject property is actually used for the tax-exempt purpose. It should be noted, however, that the record in this case fails to demonstrate the actual use to which plaintiff puts the property, and consequently, even if I were to find that plaintiff meets the first requisite, plaintiff’s claim would have to be denied for failure of proof as to the third criterion.