MENYUK, J.T.C.
Plaintiff appeals from the judgment of the Mercer County Board of Taxation (the “County Board”) denying it an exemption from local property taxation for tax year 2003. Plaintiff originally sought exemption on the grounds that the subject property is used for educational or charitable purposes or for the moral and mental improvement of men, women and children. Plaintiff alternatively contested the valuation of the property. At trial, the plaintiff withdrew all claims except for exemption based on plaintiff’s use of the property in its work for the moral and mental improvement of men, women and children. N.J.S.A. 54:4-3.6. For the following reasons, I conclude that the property is not qualified for exemption.
The subject property, designated as Block 2597.01, Lot 8.01, on the tax map of Hamilton Township, consists of a condominium unit of approximately 4100 square feet in a building of approximately 23,000 square feet, located on about two and one half acres of land. Plaintiff also owns a twenty-two percent undivided interest in the condominium’s common areas. The assessment, as affirmed by the County Board, is as follows:
Land $ 96,000
Improvements $472,600
Total $568,600
Plaintiff acquired the propex'ty by deed dated March 7, 2002 and occupied it shox’tly thereafter. Plaintiff filed an initial statement *470 claiming exemption from local property taxes pursuant to N.J.S.A 54:4-4.4 on or about October 23, 2002. Defendant’s assessor denied the claim for exemption on the ground that the use of the subject was “not a qualified exempt use.” The County Board issued a judgment on June 19, 2003, denying an exemption on the subject property, and an appeal was timely filed with this court pursuant to N.J.S.A 54:51A-1(a).
The subject has a reception area, a workroom with copy and fax machines that is also used for storage, a kitchen, a storage room, six or seven offices and a conference room seating approximately sixty persons. Plaintiff uses the subject as its administrative offices, for its own meetings and as a place to conduct educational programs described in more detail below. Plaintiff occasionally permits other organizations to use its conference room. Although plaintiff has a fee schedule for use of its facilities by outside organizations, plaintiffs executive director, Edward Meglis, Jr., testified that the fee is rarely collected. He stated that the property has been used for meetings by the county school business administrators’ associations, by the New Jersey Department of Education, by the Division of Purchasing, by the Abbott school districts and similar groups. Mr. Meglis believed that the New Jersey Propane Society was the only for profit group that had used plaintiff’s facilities.
Plaintiff was incorporated in 1987 as a New Jersey not-for-profit corporation. It is qualified as exempt from federal income taxation pursuant to I.R.C. § 503(c)(3). It has also been issued an exempt organization certificate by the New Jersey Division of Taxation under the Sales and Use Tax Act. See N.J.S.A 54:32B-9(b) (exempting certain sales by or to a corporation organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary or educational purposes).
Plaintiffs principal area of concern is persons employed by school districts throughout the state who function in various business and financial, as opposed to instructional areas. Plaintiff has three categories of dues-paying members. The first, called “active members,” consists mainly of chief school financial officers *471 and school business administrators, although other supervisory-persons working in areas of school business administration, such as transportation supervisors and building and grounds supervisors, may also join as active members. Dues for active members are one percent of the member’s salary per year, with a “cap” of $900. There were approximately 665 active members during the period 2003-2004, which, Mr. Meglis testified, was not substantially different than for the prior year. According to plaintiff’s bylaws, of the three categories of dues-paying members, only active members are entitled to vote.[1]
Associate education members may be anyone interested in the profession of school business administration, such as college students, but are more typically school district support staff and other school district personnel that would report to a chief school financial officer or school business administrator. Associate education members include intermediate supervisory personnel, such as transportation supervisors and building and grounds supervisors, as well as secretaries to chief school financial officers and to school business administrators. Dues for associate education members are $150 a year. There were approximately ninety-five associate members during 2003-2004.
The last category of dues-paying membership is “associate business members,” which are for profit businesses that provide goods and services to school districts. According to Mr. Meglis, by virtue of their membership in plaintiff, these businesses have the opportunity to network with school business administrators and others making purchasing decisions for their school districts. There were approximately 260 associate business members during 2002-2003, each of which paid dues of $350 per year.
Plaintiffs certificate of incorporation sets forth the following corporate purposes:
a. To engage exclusively as an organization to advance educational, scientific, and charitable endeavors within the meaning of section 501(c)(8) of the Internal *472 Revenue Code of 1954 (or corresponding provisions of any subsequent federal tax laws).
b. To advance education at the elementary, secondary, college, and post-graduate levels.
c. To better enable the members and the general public to conduct the management of schools at all levels in the planning, organizing, coordinating, and improvement thereof for the benefit of the public attendance and the community.
d. To provide for the public findings of such research and to make available thereto and to conduct field research experiments in the aforesaid areas for the benefit of those attending schools and the public in general.
e. To engage in a program of professional education for persons carrying on activities in the field of school administration.
f. To protect the public by promoting the highest standards of ethical conduct by persons carrying on activities in the field of school administration.
Plaintiffs bylaws identify corporate purposes that are similar, but not identical to those set out in the certificate of incorporation:
a. To establish and promulgate the highest standards of ethics and efficiency in business methods and practices for schools, and to make these freely available to its members and the interested public.
b. To engage in a program of education for and improvement of persons carrying on activities in the field of school business administration for the benefit of schools and school systems.
c. To conduct, sponsor, or join with others in conducting or sponsoring research concerning all phases of school business management and administration.
d. To make the result of the research projects and studies undertaken, sponsoi'ed or supported by the Association freely available to members and the interested public.
e. To cooperate with other educational associations and with federal and state governmental organizations in developing and improving school business management and administration.
f. To meet other identified needs of school business officials.
Persons employed by school districts as school business administrators are required to be certified by the New Jersey Department of Education. N.J.S.A. 18A:17-14.2. Holders of that certification “are authorized to perform duties at the district level in the areas of financial budget planning and administration, financial accounting and reporting, insurance/risk administration and purchasing----[and] may also engage in facilities planning, construction and maintenance, personnel administration, administration of transportation and food services, and central data processing management.” N.J.A.C. 6A:9-12.3. The requirements for certification as a school business administrator are set forth at N.J.A.C. *473 6A:9-12.7. Among other things, the Department of Education requires “145 clock hours of formal instruction in areas such as school plant planning, construction and maintenance; school financial and legal practices, including budget planning and administration, and double entry accounting; pupil transportation; labor relations and personnel; insurance and risk administration; and food service administration.” N.J.A.C. 6A:9-12.7(c)(iv). Certification requirements also include the participation of an experienced school business administrator who serves as a mentor in the training of a candidate. N.J.A.C. 6A:9 — 12.7(c)(iii). According to Mr. Meglis, some of plaintiffs members serve as such mentors.
Plaintiff offers courses intended to fulfill the specialized requirements for certification as a school business administrator. Mr. Meglis testified that plaintiff is the primary provider of these courses, although some colleges may offer some of the course work. Plaintiff also provides other professional development courses, programs and conferences, either on its own or, occasionally, sponsored in conjunction with other organizations of school-affiliated professionals, such as the New Jersey Association of School Administrators and the New Jersey Principals and Supervisors Association. Plaintiff distributes notices regarding its various educational programs to its membership, to every school district in the state, to other organizations such as the New Jersey School Boards Association and the New Jersey Association of School Administrators, and to the Department of Education. Approximately 1000 notices are disseminated for each program. Attendance at plaintiffs educational programs varies, depending on the topic. Some courses attract as few as fifteen to twenty persons, others as many as 20Ó. The educational programs are held throughout the state, including at the subject property. The programs were attended primarily by the membership but, according to Mr. Meglis, on average, about seven persons who were non-members attended each program in 2002-2003. He conceded, however that those persons would probably be people already employed by school districts.
Plaintiff also has an annual conference in Atlantic City. Programs from the May 2001 and 2002 conferences indicate that *474 clinics on topics of interest to the membership were offered and that several of the speakers or panelists at these clinics were principals or employees of associate business members. For example, at the May 2001 conference, employees or principals of a law firm, an accounting firm, and an insurance consultant, all associate business members, participated in a clinic entitled, “Negotiating an Employee Benefit Program that is both Cost Effective and Feasible.” The conference programs also acknowledged several associate business members for their contribution to one of the convention’s social functions. The 2002 conference program had advertisements from several associate business members. Approximately 1000 persons, including speakers and other guests, attended the last conference. Of those, approximately ninety percent were plaintiffs members.
Plaintiff publishes a quarterly magazine-like newsletter, called the “Key Post.” It is circulated to the same persons to whom notices of plaintiffs professional education courses are sent. According to Mr. Meglis, the purpose of the newsletter is to present research and information of interest to the membership, but that it does not promote any particular products. It does, however, contain substantial numbers of advertisements for various goods and services of a kind purchased by school districts. Mr. Meglis testified that at one time, plaintiff cheeked the references of its advertisers but that it had stopped doing so in 2001 or 2002. The Key Post includes articles of both professional interest to school business officers, such as one about internet bidding and e-commerce as it relates to school procurement, as well as articles of personal interest to plaintiffs members, such as an article by plaintiffs pension consultant on the taxation of retirement income. A regular feature of the newsletter is the Executive Director’s Report from Mr. Meglis, summarizing plaintiffs recent activities of note. The October 2002 issue reported the following, for example:
I would like to highlight some [issues] that are extremely significant:
2. The elimination of the vote on the school budget if within the cap____This has been a goal of this association for almost 20 years and this year may be the best opportunity for us to be successful. This may require a tradeoff of when elections *475 are held but I believe that the majority of us would agree that eliminating the vote is our primary concern.
[Ed Meglis, Jr., Executive Director’s Report, Key Post, October 2002 at 6].
The February 2002 issue contained an interim report on plaintiffs strategic plan, which included the following:
Goal 1
Enhance the professionalism of the School Business Administration profession with constituents outside the field.
It is anticipated that the State Board of Education will begin review of all certification programs in early 2002. NJASBO’s Education and Certification committee has met and developed the following proposal that we will use as a basis of our attempt to influence changes in our certification program.:
1. Require a Masters Degree for anyone entering the profession by a certain date. This would be prospective in nature and a grandfather clause would be included for those who already have attained certification. It is anticipated that the new rule would go into effect in 2003[J
The Association continues to encourage members to seek further recognition by its Professional Registration Program and continues to support tenure as one of its standing goals.
[Edward Meglis, Jr., Interim Report on NJASBO’s Strategic Plan, Key Post, February 2002 at 14].
The April 2002 Executive Director’s Report stated:
Our goal of requiring a master’s degree as an entry point into our profession will take about 12-18 months to come to fruition. If these timelines are accurate, it is assumed that the requirement will be put into place in the summer or fall of 2003. Adequate time will be developed to permit a thorough review of the proposal and everyone will have ample opportunity to present his or her views. NJASBO ratified this goal as part of our strategic plan in 1999. We believe that it will go a long way in enhancing our profession and the image of the School Business Administrator as an integral part of the management team.
[Ed Meglis, Jr., Executive Director’s Report, Key Post, April 2002 at 3],
The State Board of Education adopted a regulation requiring a masters degree for certified school business administrators on December 18, 2008. 36 N.J.R. 469(a) (January 20, 2004).
The July 2002 issue contained the following as part of the Executive Director’s Report:
Our legislative initiative continues to gain momentum and we are looked upon with a great deal of credibility because of the continued good work of Gene Keyek, our governmental relations consultant. We have managed to keep certain pieces of legislation from being passed that would have proven detrimental to our membership, and are still working on getting legislation passed that would benefit our constituency. In the latter category, we are attempting to eliminate the opportuni *476 ty for a superintendent to also serve as business administrator and plan to thoroughly examine the school budget/election process. This is an area that the membership must become more actively involved since most legislators want to hear from their constituents rather than organizational personnel.
[Ed Meglis, Jr., Executive Director’s Report, Key Post, July 2002 at 6].
As is clear from the foregoing, plaintiff sought to influence legislation and the regulatory process. Plaintiff is, therefore, a lobbyist, as that term is defined by N.J.S.A. 52:13C-20(d). As such, it files the annual report of a lobbyist organization required by N.J.S.A. 52:130-22.1. The reports filed for 2001 and 2002 state that plaintiff employed three legislative agents: Mr. Meglis, the executive director, John F. Donahue, the assistant executive director, and Eugene J. Keyek. Mr. Keyek’s title was “legislative liaison,” and his job responsibilities were solely related to lobbying. He is a part-time consultant and was paid a salary of $31,400 in 2001 and $32,500 in 2002. Mr. Meglis and Mr. Donahue did not receive separate compensation for their lobbying duties.
Plaintiff also offers certain personal services to its active members. Plaintiff has negotiated for its active members fixed hourly fees with particular law firms for certain specified legal services. According to plaintiffs policy statement on legal assistance, the primary purpose of this service is to provide legal assistance to members in connection with employment-related problems. Plaintiff also offers its active members the services of its pension/retirement consultant, who is available to meet with members by appointment. Plaintiff posts job vacancies for its membership. Mr. Meglis testified that these job postings reach a broader audience than plaintiffs membership, and that plaintiff circulates the postings as a public service. It was not clear from his testimony how the postings are disseminated.
Plaintiffs does not solicit and does not receive charitable contributions. Its audited financial statements for the year ending June 30, 2002,[2] disclose the following sources of revenue:
*477 Dues $ 530,435.03
Conferences $ 160,734.64
Workshops and Seminars $ 176,030.00
Certification courses/Ed. programs $ 72,813.25
Miscellaneous and Special Projects $ 144,085.28
Investment Return $ 11,751.32
Total Revenues $1,095,849.52
The category “miscellaneous and special projects” represents commissions received by plaintiff for certain investment and purchasing programs organized by plaintiff for the use of school districts. There was testimony regarding three such programs. The first was “MBIA,” a for profit entity conducting an investment program for school districts. Plaintiff acts as MBIA’s sponsor, but does no solicitation. Mr. Meglis testified that plaintiff went out and got proposals from several entities, reviewed the proposals with a financial consultant and awarded MBIA the contract. Plaintiff receives a percentage of the assets invested. Plaintiffs yearly revenues from this program have ranged from $49,000 to $104,000. The other two programs are called ACTS and ACES, both of which are cooperative purchasing programs. The basis and amounts of plaintiffs revenues from these sources was not clear from the testimony.
Plaintiffs revenues exceeded expenditures for the years ending June 30, 2000 through June 30, 2002 by amounts ranging from $18,735.52 to $112,334.90. Expenditures exceeded revenues by $20,608.20 for the year ending June 30,1999.
Because they represent a departure from the fundamental approach of our statutes that all property bear its just and equal share of the public burden of taxation, exemption statutes are strongly construed against those claiming exemption. Princeton Univ. Press v. Bor. of Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961). Those claiming an exemption from taxation have the burden of establishing their entitlement to it. Ibid. That principle does not, however, justify distorting the language or the legislative intent of the statute. Paper Mill Playhouse v. Millbrnm Tp., 95 N.J. 503, 507, 472 A.2d 517 (1984). While the *478 construction of the statute must be strict, it must be reasonable, and not used to defeat the evident legislative purpose. Ibid.
That plaintiff is exempt from federal income tax is irrelevant to whether it is exempt for local property taxation pursuant to N.J.S.A. 54:4-3.6. Presbyterian Homes of the Synod of New Jersey v. Division of Tax Appeals, 55 N.J. 275, 286 n. 3, 261 A.2d 143 (1970); Black United Fund v. East Orange, 17 N.J. Tax 446, 449 (Tax 1998), aff'd 19 N.J. Tax 480 (App.Div.2001). Similarly, plaintiffs recognition as an exempt organization for purposes of the sales and use tax by the Division of Taxation has no bearing on its eligibility for local property taxation, since the requirements of N.J.S.A. 54:32B-9(b) are different than those of N.J.S.A 54:4-3.6. Although N.J.S.A 54:32b-9(b) provides an exemption from the sales tax for some transactions by nonprofit corporations organized and operated exclusively for educational purposes, N.J.S.A. 54:4-3.6 does not exempt entities organized for purposes related to education, although it does exempt schools. International Schools Services, Inc. v. West Windsor Tp., 21 N.J. Tax 553, 569 (Tax 2004), appeal docketed, A2017-04T2 (App.Div. December 23, 2004); 1711 Third Avenue, Inc. v. Asbury Park, 16 N.J. Tax 174, 182 (Tax 1996); Secondary School Admissions Test Board, Inc. v. Princeton Bor., 13 N.J. Tax 467, 474-77 (Tax 1993).
The statutory requirements for the moral and mental improvement exemption provided by N.J.S.A 54:4-3.6 were set forth in Paper Mill Playhouse v. Millburn, supra 95 N.J. at 506, 472 A.2d 517. A claimant must demonstrate that: (1) it is organized exclusively for the moral and mental improvement of men, women and children; (2) the subject property must actually be used for the tax exempt purpose;[3] and (3) the operation and *479 use of its property must not be conducted for profit. Id. at 506, 472 A.2d 517.
There is no real dispute as to whether plaintiff operates and uses its property for profit. It is true that plaintiffs operations produce an excess of revenues over expenses in some years, but its revenues are used in its programs. The money does not go into someone’s pocket. Id. at 522, 472 A.2d 517. As in Paper Mill Playhouse, plaintiffs certificate of incorporation provides that upon dissolution, its assets are to be turned over to a similar charitable organization, and any accumulation of surplus cannot benefit any person. Id. at 523, 472 A.2d 517. I conclude that plaintiffs operations are consistent with the third prong of the Paper Mill Playhouse test. Accordingly, whether the subject property is exempt depends on whether plaintiff is organized exclusively for exempt purposes and whether the subject property is actually used for exempt purposes.
Whether plaintiff is organized exclusively for the moral and mental improvement of men, women and children must be determined from its organizational documents. Black United Fund v. East Orange, supra, 17 N.J. Tax at 455; 1711 Third Avenue, Inc. v. Asbury Park, supra, 16 N.J. Tax at 180; Planned Parenthood of Bergen County, Inc. v. Hackensack, 12 N. J. Tax 598, 610 n. 6 (Tax 1992), aff'd 14 N.J. Tax 171 (App.Div.1993).
Plaintiffs certificate of incorporation sets forth six separate corporate purposes, the majority of which may generally be described as furthering the professional education and ethical training of persons engaged in school business administration, thereby benefiting plaintiffs members and the public at large through improved school administration, and by extension, the educational process as a whole. The certificate of incorporation also states that it is a corporate purpose for plaintiff to conduct research in the management of schools and to make available the results of such research to the public.
The corporate purposes enumerated in plaintiffs bylaws are similar to those stated in the certificate of incorporation and also include cooperation with other educational associations and with *480 federal and state governmental organizations in developing and improving school business management and administration. The bylaws also contain the “catchall” purpose of “meet[ing] other identified needs of school business officials.”
Defendant points to Secondary School Admissions Test Board, Inc. v. Princeton Borough, supra, 13 N.J. Tax at 470, where the court rejected the claim of an entity that it was entitled to an exemption on the ground that it was organized exclusively for the moral and mental improvement of men, women and children. The plaintiffs corporate purposes included providing testing programs for admission to and placement in secondary schools. The court held that, even if the plaintiffs purposes could be characterized as being partly concerned with the moral and mental improvement of men, women and children, that was not its exclusive purpose, as required by N.J.S.A. 54:4-3.6. Id. at 478. Although the plaintiff had functions and attributes which could be characterized as educational and mentally uplifting, they were secondary to its main object, which was to confer a benefit on the schools that were its members, and that its main object only indirectly provided moral and mental uplift to society. Id. at 478-79.
See also, International Schools Services, Inc. v. West Windsor Tp., supra, 21 N.J. Tax at 559, where the court similarly found that the plaintiff was not organized exclusively for the purpose of the moral and mental improvement of men, women and children because its corporate purposes were not designed to provide moral and mental improvement directly. The corporate purposes in that case were to benefit schools through aid, promotion and encouragement; to foster the provision of education by the payment of salaries and other compensation to teachers; and to devote all or part of its income to the furtherance and support of educational projects. Ibid.
Defendant has additionally cited Gwinnett County Board of Tax Assessors v. Georgia School Board Ass’n, 211 Ga.App. 437, 439 S.E.2d 666 (1993). The court in that case rejected the claim for exemption of an organization providing services to and representing local school districts and boards of education throughout *481 Georgia, because the organization did not dispense public charitable services. The organization conducted activities that were very-similar to some of those conducted by plaintiff in this case, and its activities were funded by member dues and fees for services such as training programs, among other sources. Of course, Georgia statutes and care law are different from New Jersey’s and their determinations, although instructional, are not binding on New Jersey courts.
Plaintiff, on the other hand, argues that its activities are substantially the same as those conducted by the claimant of an exemption in Town of Bloomfield v. Academy of Medicine of New Jersey, 47 N.J. 358, 221 A.2d 15 (1966). It emphasizes that the Court in that case held that an organization formed for the advancement and promotion of medical and surgical science, which collected dues from members, charged fees for educational programs and held meetings underwritten by pharmaceutical companies and other groups was exempt from local property taxation under the “moral and mental improvement” exemption. Id. at 365-66, 221 A.2d 15. The Court specifically found that the library maintained by the organization was open to the public and that, although the courses and symposia held by the organization were likely of little interest to the general public, they were nevertheless available to the general public. Id. at 365, 221 A.2d 15.
Plaintiffs comparison of itself to Academy of Medicine of New Jersey is based on claimed similarities in the use of the subject property and the activities of the organization, which constitute the second prong of the Paper Mill Playhouse test. There was only a brief discussion by the Court of the first qualification for exemption set forth in Paper Mill Playhouse: the Academy’s organization and whether that organization was exclusively for exempt purposes. As stated by the Court in Academy of Medicine of New Jersey, supra, 47 N.J. at 362, 221 A.2d 15, the purposes of the organization were “pathological and anatomical study and promotion of medical and surgical science, by such means as to them shall appear expedient and proper, and also maintenance of a public library.” Ibid.
*482 The cases construing the moral and mental improvement exemption require corporate purposes directed at the moral and mental improvement of the general public. By way of contrast, plaintiff has corporate purposes that are specifically intended to provide moral and mental improvement only to its members and other employees of school districts. For example, one of the corporate purposes set out in the certificate of incorporation is “to engage in a program of education for and improvement of persons carrying on activities in the field of school business administration for the benefit of schools and school systems.” Nothing in that purpose can be construed as providing moral and mental improvement to the general public. Such training most probably indirectly benefits school districts and the general public by producing school administrators who are better able to run a school district efficiently and in a cost-effective manner. That is something entirely different than the exclusive purpose of morally and mentally uplifting the general public.
[T]he moral and mental improvement exemption is limited to organizations which directly rather than indirectly seek to uplift the general public morally and mentally. Plaintiffs activities contribute to society’s moral and mental improvement only indirectly.
[Secondary School Admissions Test Board, supra, 13 N.J. Tax at 478-79],
The same objection can be found in another purpose set forth in the plaintiffs certificate of incorporation, namely, “[t]o cooperate with other educational associations and with federal and state governmental organizations in developing and improving school business management and administration.”
In a review of plaintiffs organizational documents to determine whether plaintiff is organized exclusively for the exempt purpose of the moral and mental improvement of men, women and children, an even more significant provision is that contained in plaintiffs bylaws: “[t]o meet other identified needs of school business officials.” There is nothing on the face of this provision that indicates a corporate intent to uplift the general public morally and mentally: the plain language of the provision states an intent to meet the needs of school business officials, and there is nothing in that language which suggests even an indirect benefit to the general public.
*483 Based on the foregoing provisions of plaintiffs certificate of incorporation and bylaws, I conclude that plaintiff is not organized exclusively for the moral and mental improvement of men, women and children, and therefore is not qualified for exemption pursuant to N.J.S.A. 54:4-3.6.
I further find that, even if the first part of the Paper Mill Playhouse test had been satisfied, many of plaintiffs activities are unrelated to the moral and mental improvement of anyone. Those unrelated activities are performed by the plaintiffs employees on the subject property and it is impossible to conclude what, if any, portion of the property might actually be used for exempt purposes.
Prominent among these activities is plaintiffs lobbying. Mr. Meglis’ reports in the Key Post make clear that plaintiffs interactions with State administrators and legislators is not solely for the purpose of improving training of school business officers for the benefit of the general public. While it may have that effect, plaintiffs purpose is to improve the professional status of its members and enhance their standing comparable to that enjoyed by school personnel providing or supervising instructional services. See, e.g., Ed Meglis, Jr., Executive Director’s Report, Key Post, April 2002 at 3: “We believe that [requiring a masters degree for certification] will go a long way in enhancing our profession and the image of the School Business Administrator as an integral part of the management team.” Notably, plaintiff wanted its members to be “grandfathered” with respect to any new requirements,[4] a goal not entirely compatible with the goal of better professional performance. Tenure for school business administrators, said to have been one of plaintiffs long-standing goals, is not a vehicle for the moral and mental improvement of the general public. Finally, “the elimination of the vote on the school budget if within the cap,” see Ed Meglis, Jr., Executive Director’s Report, Key Post, October 2002 at 6, whatever the *484 merits of the proposal may be, does not promote moral or mental improvement.
Plaintiff has relied here primarily on Town of Bloomfield v. Academy of Medicine of New Jersey, supra, 47 N.J. at 358, 221 A.2d 15. That Court specifically noted, however, that
Appellant concedes that if any material portion of its activity was directed toward influencing legislation for its members’ pecuniary and personal advantage or securing the economic welfare of the medical and dental professions it would not be entitled to tax exemption. The record clearly establishes that appellant has no activities in the fields of protective legislation or medical economics.
[Id. at 365-66, 221 A.2d 15].
In addition to plaintiffs lobbying activities, the MBIA investment program and the purchasing programs organized by plaintiff from which it derives substantial income also are not for the moral and mental improvement of men, women and children. While such programs may commendably assist school districts in saving money, that is not an exempt purpose set forth in N.J.SA. 54:4— 3.6.
Finally, it is not clear that the core activity that forms the basis for plaintiffs claim of exemption — its educational programs— constitutes the moral and mental improvement of men, women and children. The evidence indicates that non-members who attend the programs are school district employees already engaged in school business administration. Although the programs are theoretically open to the general public, the dissemination of course and program announcements is limited to people already connected to school districts or the educational bureaucracy at the county or state level. This set of facts is somewhat different than those of Town of Bloomfield v. Academy of Medicine of New Jersey, supra, 47 N.J. at 363, 221 A.2d 15, where it was noted that one symposium conducted by the Academy was on the subject of the oral polio vaccine, and “was attended largely by members of the general public.” In addition, the Academy maintained a library open to the general public.
For the foregoing reasons, I conclude that plaintiff was not organized exclusively for the moral and mental improvement of men, women and children. I further conclude that, even if its *485 corporate purposes could be construed as being for the moral and mental improvement of the general public, plaintiff failed to establish which portion of the subject, if any, was actually used for those purposes, as opposed to activities unrelated to its educational mission. See, N.J.S.A. 54:4-3.6 (if any portion of a building used for the moral and mental improvement of men, women and children is used for purposes which are not exempt, “that portion shall be subject to taxation and the remaining portion only shall be exempt from tax”). Those claiming exemption have the burden of establishing their entitlement to it. Princeton Univ. Press., supra, 35 N.J. at 214, 172 A.2d 420. Accordingly, the judgment of the Mercer County Board of Taxation is affirmed.

 Under the bylaws, emeritus members, who are apparently not required to pay dues, also have voting rights.

 Financial statements covering the years ending June 30, 1999 through June 30, 2002 were in evidence. The statements for the year ending June 30, 2002 appears to be fairly typical with respect to the relative size of the revenues from each of the sources.

 At the time Paper Mill Playhouse v. Millburn Tp. was decided, N.J.S.A. 54:4-3.6 required that the subject property be actually and exclusively used for the tax exempt purpose. The statute has since been amended to modify the second part of the test, which now requires only that the property be actually used for the exempt purpose. L. 1985, c. 395. Secondary School Admissions Test Board, Inc. v. Princeton Bor., 13 N.J. Tax 467, 478 n. 7 (Tax 1993); Planned Parenthood of Bergen County, Inc. v. Hackensack, 12 N.J. Tax 598, 603, n. 2 (Tax 1992), aff'd 14 N.J. Tax 171 (App.Div.1993).

 Consistent with those desires, the new requirements, as adopted on December 18, 2003, 36 N.J.R. 469(a) (January 20, 2004), were not applicable to persons who were already certified. N.J.A.C. 6A:9-12.7(k).